MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 8
Docket:       Yor-12-3
Argued:       September 13, 2012
Decided:      January 15, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.
Majority:     SAUFLEY, C.J., and SILVER, GORMAN, and JABAR, JJ.
Dissent:      ALEXANDER and MEAD, JJ.

KAY H. COX

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

SILVER, J.

[¶1]   Kay Cox appeals from the entry of a summary judgment in the Superior Court (York County, *Fritzsche, J.*) in favor of Commonwealth Land Title Insurance Company (Commonwealth) determining that Commonwealth had no duty to defend Cox against a claim from a third party that Cox's property is subject to a view easement.  We vacate the judgment.

## I.  BACKGROUND

[¶2]   On April 8, 1998, Cox took title to condominium unit three of the Turbat's Creek Preserve Condominium in Kennebunkport (the unit is also known as Junipers) from Turbat Creek Preservation Limited Liability Company (Turbat Creek).  The deed conveying the property to Cox (Cox deed) describes the property in an attached and incorporated Exhibit A.  Exhibit A states that Junipers

2

is conveyed "together with" and "SUBJECT TO" all easements "described" or "referred to" in the Declaration[1] and "all matters" in a March 11, 1998, Agreement Respecting Easements and Restrictions between Jill B. Knoth, Turbat Creek, and The Turbat's Creek Preserve Condominium Association (1998 Easement Agreement). Among other easements, the Condominium Declaration describes and refers to a view easement that burdened the property that Cox purchased. This view easement was created by, and further described in, a 1966 deed from Felicia Sholik to Malcolm H. Frost and Mathilde Gray Frost (Sholik deed). This deed granted the Frosts a view easement over the Sholik property for the benefit of the adjacent Frost property. However, the 1998 Easement Agreement releases this view easement.

[¶3] In connection with her purchase of Junipers, Cox also signed an agreement certifying that she received and reviewed a copy of the Condominium Declaration and was aware of all of its terms and conditions (Cox Agreement). The Condominium Declaration makes reference to the view easement.

[¶4] Cox purchased title insurance for the property from Commonwealth, effective April 10, 1998. The Commonwealth policy insures "against loss or damage . . . sustained or incurred by the insured by reason of . . . (2) Any defect in

---

[1] The Declaration mentioned in the Cox deed is the Declaration of Condominium for Turbat's Creek Preserve Condominium (Condominium Declaration).

or lien or encumbrance on the title." The Commonwealth policy insures the property described in Exhibit A of the policy, which is virtually identical to Exhibit A of the Cox deed.[2]

[¶5] The coverage provided by the policy is limited by numerous exclusions and exceptions. Of note, standard exclusion 3(a) excludes "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured claimant." The policy's specific exceptions are enumerated in Schedule B, Part I, which provides in relevant part:

> This policy does not insure against loss or damage by reason of the following:
>
> . . . .
>
> 6. Any easement, exception, reservation, covenant, condition or restriction as may appear in the attached Exhibit A.
>
> 7. Subject to conditions, restrictions, covenants and conditions of Declaration of Condominium of Turbat's Creek Preserve Condominium, Kennebunkport, Maine, dated June 13, 1997, and recorded in the York County Registry of Deeds in Book 8300, Page 001, and Plans of Turbat's Creek Preserve Condominium, recorded in the York County Registry of Deeds, in File Book 472, Page 1.

---

[2] Exhibit A to the Commonwealth policy describes the Cox property. Its language is identical to the language contained in Exhibit A to the Cox deed. Exhibit A to the Commonwealth policy also includes a notation following the description that reads:

> Being the same premises conveyed from Turbat Creek Preservation Limited Liability Company to Kay H. Cox by Warranty Deed dated April 8, 1998 and recorded at Book 8733, Page 141 in the York County Registry of Deeds.

4

. . . .

> 15. Agreement between Turbat Creek Preservation Limited Liability Company and Kay H. Cox dated April 8, 1998 and recorded at Book 8733, Page 135 in the York County Registry of Deeds.

[¶6]  In July 2010, Cox's neighbor, Kenan E. Sahin, initiated a lawsuit against Cox alleging that as the owner of the property previously owned by the Frosts, he was entitled to the benefit of the view easement created by the Sholik deed.  Sahin's complaint alleges that, despite the 1998 Easement Agreement's release of the view easement before Cox took title to the property, the references to the view easement in the Condominium Declaration and Cox deed show that the easement existed when Cox took title, and that it still exists.[3]  Cox tendered Sahin's complaint to Commonwealth requesting a defense pursuant to her title insurance policy.  Commonwealth denied Cox's request based on exclusion 3(a) and exceptions 6, 7, and 15.

---

[3]  Sahin's complaint, in part, reads as follows:

> 13.  In the Declaration, Junipers (identified as Unit #3) is expressly made subject to the View Easement contained in the Sholik Deed.

> 14.  On or about March 11, 1998, Turbat's Creek entered into an agreement (the "Easement Agreement") with Jill B. Knoth, the then-owner of Timberledge, which agreement, among other things, "release[d] onto" Turbat's Creek the View Easement.

> 15.  On March 24, 1998, the Town of Kennebunkport Planning Board approved the condominium plan and a recorded plat of the condominium, as executed by the members of the Planning Board, was recorded on March 30, 1998 in the York County Registry of Deeds in Condo File 472, Page 3 (hereinafter referred to as the "Approved Plan").

> 16.  The Approved Plan specifically states in Note 10 that Junipers (Unit #3) is subject to the View Easement.

[¶7]  Cox sued Commonwealth alleging a breach of contract and requesting a declaratory judgment that Commonwealth had a duty to defend Cox against the Sahin complaint.[4]  Cox and Commonwealth each moved for summary judgment. The Superior Court granted Commonwealth's motion and denied Cox's motion, finding that the Commonwealth policy specifically excluded the view easement from coverage.  Cox appeals.

## II.  DISCUSSION

[¶8]  Cox argues that Commonwealth has a duty to defend Cox against the Sahin complaint pursuant to the title insurance policy.  We review both the entry of a summary judgment and the interpretation of an insurance policy de novo. *Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 8, 38 A.3d 1267.  We interpret any unambiguous language in the policy according to its plain meaning.  *Id.* ¶ 9.  We construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder.  *Id.*  Policy language "is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought."  *Id.* (quotation marks omitted).

---

[4]  On July 15, 2011, the Superior Court (York County, *Brodrick, J.*) issued a judgment in favor of Cox in the underlying Sahin suit.  The court decided on cross-motions for summary judgment that the 1998 Easement Agreement terminated the view easement created by the Sholik deed.  On Sahin's appeal, we affirmed that judgment.  *See Sahin v. Cox*, Mem-12-58 (May 31, 2012).

6

[¶9]  We determine whether an insurer has a duty to defend by comparing the allegations of the complaint with the language of the policy.  *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 9, 36 A.3d 876.  An insurer's duty to defend is triggered if the complaint tendered contains any allegations that, if proved, could fall within the coverage afforded by the policy.  *Id.* ¶ 10.  An insurer's refusal to defend is proper only when the allegations of the complaint fall completely outside the policy.  *Id.* ¶ 13.  Regardless of extrinsic evidence, if the complaint—read in conjunction with the policy—reveals a mere *potential* that the facts may come within the coverage, then the duty to defend exists.  *Penney v. Capitol City Transfer, Inc.*, 1998 ME 44, ¶¶ 5-7, 707 A.2d 387.  Accordingly, we must evaluate the policy in its entirety, including any exclusions and exceptions, to determine whether Commonwealth has a duty to defend Cox.  *Home Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 229 F.3d 56, 63 (1st Cir. 2000) (applying Maine law); *see Johnson v. Amica Mut. Ins. Co.*, 1999 ME 106, ¶¶ 6-7, 733 A.2d 977.

[¶10]  As described above, Cox's policy provides title coverage for the property described in Exhibit A of the Cox deed.  Exhibit A includes a reference to the Condominium Declaration, which refers to the view easement.  However, Exhibit A also includes a reference to the 1998 Easement Agreement, which extinguished the disputed view easement.  Due to this ambiguity, it is unclear

whether the policy anticipated that the property was burdened by a view easement. The exclusions and exceptions do not clarify this ambiguity.

[¶11]  The policy's exceptions fall into two categories: the first type consists of standard exceptions used for general exclusions, and the second type consists of specific exceptions that directly relate to this particular title and its potential encumbrances and concerns.  Regarding the view easement, Commonwealth attempts to limit its duty to defend through the first type of exception, by asserting that general exception 3(a) excludes coverage because Cox assumed this lien. Also, specific exceptions 6, 7, and 15 all refer either directly or indirectly to the Condominium Declaration, which references a view easement that did not then exist.  Through references to the Condominium Declaration, the policy clearly references the view easement, however, it is ambiguous whether the policy contemplates that the view easement exists, as evidenced by the contradictory references set forth in the policy's Exhibit A.

[¶12]  In order to overcome the ambiguous nature of this potential easement, Commonwealth could and should have specifically mentioned the alleged view easement in a specific exception.  Prior to issuing the title insurance policy, Commonwealth had the opportunity to learn about the disputed view easement and specifically exclude coverage for any claim surrounding the view easement. Commonwealth used specific exceptions regarding other potentially troublesome

encumbrances.  For example, the language in the policy clearly excludes coverage against any claim related to a specific pathway easement through a specific exception.[5]  By failing to specifically exclude claims relating to the view easement, the policy remains ambiguous regarding such coverage.

[¶13]  In order to determine whether Commonwealth had a duty to defend Cox against Sahin's claim, we must compare the allegations of the complaint with the language of the policy.  *See Mitchell*, 2011 ME 133, ¶ 9, 36 A.3d 876.  Sahin's complaint alleges that Junipers is encumbered by the disputed view easement, but it also alleges that the prior owner of Junipers secured a release on the view easement.  Thus, according to the complaint, the disputed view easement might not exist.  The policy, as discussed above, is ambiguous regarding coverage of claims involving the view easement.  Construing the ambiguous policy language in favor of the policyholder, *see id.* ¶ 11, the policy does not exclude coverage for claims involving a view easement that does not exist.

[¶14]  Due to the broad nature of the duty to defend and the law's requirement that insurance-policy interpretation be focused on the insured,

---

[5] Exception 13 of the Commonwealth Title Insurance Policy states:

Subject to a pathway easement as described in deed of Earl L. Brooks to James H. Eaton, et al. dated August 16, 1954, recorded in York County Registry of Deeds in Book 1268, Page 575, described as situated "on the easterly side of knoll as once reserved by Benjamin R. Smith in his deed of September 3, 1909 . . . recorded in York County Registry of Deeds in Book 579, Page 281."

Commonwealth had a duty to defend Cox in the underlying litigation. *See id.* ¶¶ 9-11; *Penney*, 1998 ME 44, ¶ 5, 707 A.2d 387.

The entry is:

> Judgment vacated and remanded for further action consistent with this opinion.

---

MEAD, J., with whom ALEXANDER, J., joins, dissenting.

[¶15]  I respectfully dissent.  I do not disagree with the Court's recitation of facts or the standards to be applied when reviewing an insurer's duty to defend.  I do, however, depart from the Court's conclusion that the policy contains an ambiguity regarding specific exceptions 6, 7, and 15 that requires us to construe those provisions as not creating an exception to Commonwealth's duty to defend claims asserted in the Sahin complaint.[6]

[¶16]  The Court's analysis is founded upon the undisputed fact that the documents incorporated into the exclusionary language of the policy include references to the creation of a view easement and the dissolution of that very same

---

[6]  The majority opinion states: "The policy . . . is ambiguous regarding coverage of claims involving the view easement.  Construing the ambiguous policy language in favor of the policyholder . . . the policy does not exclude coverage for claims involving a view easement that does not exist."  Majority Opinion ¶ 13.

easement. There is nothing uncertain or ambiguous about the fact that a deed (the Sholik deed) created a valid view easement and that an agreement (the 1998 Easement Agreement) later released it. These facts are patently apparent in the documents that constitute Cox's chain of title and those documents are incorporated into the exclusions and exceptions of the insurance policy.

[¶17] Specific exceptions 6, 7, and 15 all refer directly or indirectly to the Condominium Declaration. The parties agree that the Condominium Declaration explicitly refers to the view easement and the Sholik deed. Consequently, these exceptions each provide a separate basis for Commonwealth to decline to defend the claims involving the view easement as alleged in the Sahin complaint.

[¶18] That the view easement was later released is of no consequence. Indeed, this circumstance may serve to amplify concerns that litigation could spring from the creation and apparent dissolution of the easement. On these facts a carrier may, and in this case did, elect not to provide coverage for later claims contesting the validity of the creation or termination of the easement. Although the references by incorporation may be cumbersome, they are not ambiguous. Commonwealth has no duty to defend claims asserting the existence or non-existence of the view easement.

[¶19] I do agree and concur with the Court's conclusion that standard exclusion 3(a) provides no basis for Commonwealth to decline to defend. Unlike

the analysis for specific exceptions 6, 7, and 15, the release of the view easement by the 1998 Easement Agreement clearly bears upon the issue of whether Cox "created, suffered, assumed or agreed to" the view easement. The inclusion of the 1998 Easement Agreement within the documents incorporated by reference effectively rebuts any claim by the insurer that Cox intended to suffer, assume, or agree to the view easement. Thus I do not accept Commonwealth's argument that standard exclusion 3(a) would provide an independent basis to decline to defend. However, because specific exceptions 6, 7, and 15 do provide a basis to decline to defend, I would affirm the decision of the trial court.

---

**On the briefs:**

> Stephen Y. Hodsdon, Esq., and Matthew J. Williams, Esq., Hodsdon & Clifford, LLC, Kennebunk, for appellant Kay H. Cox

> Chris Neagle, Esq., Troubh Heisler, Portland, for appellee Commonwealth Land Title Insurance Company

**At oral argument:**

> Stephen Y. Hodsdon, Esq., for appellant Kay H. Cox

> Chris Neagle, Esq., for appellee Commonwealth Land Title Insurance Company