MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 55
Docket:        Cum-12-140
Argued:        April 10, 2013
Decided:       June 4, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR,
               JJ.

PATRICK LANGEVIN et al.

v.

ALLSTATE INSURANCE COMPANY

GORMAN, J.

[¶1]  Patrick and Cora P. Langevin appeal from the entry of a summary judgment in the Superior Court (Cumberland County, *Warren, J.*) in favor of Allstate Insurance Company on the Langevins' reach and apply action, brought pursuant to 24-A M.R.S. § 2904 (2012).  The Langevins argue that the court erred in determining that a homeowners insurance policy issued by Allstate to Charles Johnson did not cover the damages they suffered as a result of purchasing property from Johnson, including damages for loss of investment, undisclosed physical problems with the property, and emotional distress.  Because those damages do not constitute covered "bodily injury" or "property damage" pursuant to the Allstate homeowners insurance policy, we affirm the judgment.

## I. BACKGROUND

[¶2] In August 2010, the Langevins filed a complaint against Charles Johnson ("underlying complaint") arising out of their purchase from Johnson of property located at 866 Cape Road in Hollis.[1] Although the underlying complaint includes ten counts, the Langevins are pursuing only the counts of negligence, negligent misrepresentation, negligent infliction of emotional distress, and intentional infliction of emotional distress, based on the following allegations. During the pendency of the sale of the Cape Road property, Johnson misrepresented the condition of the property and failed to disclose its prior use as a junkyard. As a result of Johnson's misrepresentations, the Langevins purchased the property for $315,000 pursuant to an April 6, 2005, purchase and sale agreement and suffered damages, including loss of the investment value of the property, undisclosed physical problems with the property, and emotional distress.

[¶3] While he owned the property at 866 Cape Road, Johnson maintained a homeowners insurance policy with Allstate. The Allstate policy provides:

> Subject to the terms, limitations and conditions of this policy, Allstate will pay damages including prejudgment interest which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

---

[1] The underlying complaint also named Johnson's real estate agent and agency as defendants but the court later dismissed the claims against those parties without prejudice, pursuant to the parties' agreement.

"Bodily injury," "property damage," and "occurrence" are all defined terms in the policy. It defines "bodily injury" as

> physical harm to the body, including sickness or disease, and resulting death, except that bodily injury does not include:
> a) any venereal disease;
> b) Herpes;
> c) Acquired Immune Deficiency Syndrome (AIDS);
> d) AIDS Related Complex (ARC);
> e) Human Immunodefiency Virus (HIV);
>
> or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

The policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." It defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage."

[¶4] When the Langevins sued him, Johnson tendered the underlying complaint to Allstate but Allstate refused to defend or indemnify Johnson, citing the policy's contract exclusion, which excludes from coverage "any liability an insured person assumes arising out of any contract or agreement." Following that denial, the Langevins and Johnson reached an agreement resolving the underlying complaint. Pursuant to the parties' agreement, the Superior Court (Cumberland

County, *Warren, J.*) entered a judgment against Johnson in the amount of $330,000.[2] That judgment does not specify the basis for liability or damages.

[¶5]  Armed with the judgment, the Langevins initiated a reach and apply action against Allstate, pursuant to 24-A M.R.S. § 2904.  On cross-motions for summary judgment, the court concluded that (1) Johnson's homeowners insurance policy's contract exclusion did not apply to exclude coverage, (2) the damages sought did not constitute "property damage," and (3) any damages for injury to the property did not result from an "occurrence."  Accordingly, the court granted Allstate's motion for summary judgment, denied the Langevins' motion for summary judgment, and entered judgment for Allstate.  The court's order entering judgment does not discuss the Langevins' claim that the policy covers any damages resulting from their emotional distress.  The Langevins timely appealed pursuant to 14 M.R.S. § 1851 (2012) and M.R. App. P. 2.

## II.  DISCUSSION

[¶6]  The Langevins contend that the court erred in concluding that the Allstate policy did not cover the damages awarded in the underlying judgment. They first argue that the $330,000 judgment awarded damages for loss of investment and physical problems with the property on their negligent

---

[2]  As part of their agreement, the Langevins agreed not to execute the judgment against Johnson personally.

misrepresentation claim, as well as damages for emotional distress on their claims for intentional infliction of emotional distress or negligence. The Langevins then argue that (1) the damages for loss of investment and physical problems with the property constitute covered "property damage" and (2) the emotional distress damages constitute covered "bodily injury."[3] Allstate essentially argues that none of the Langevins' claims supports recovery of their claimed emotional distress damages. Additionally, Allstate argues that there was no "property damage" that entitles the Langevins to recover on their negligent misrepresentation claim.[4]

[¶7] "We review the grant of a summary judgment de novo." *Trott v. H.D. Goodall Hosp.*, 2013 ME 33, ¶ 11 n.5, --- A.3d --- (quotation marks omitted). Where, as here, there are no genuine issues of material fact, our review is focused on whether Allstate was entitled to judgment as a matter of law. *See Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 8, 38 A.3d 1267.

---

[3] The Langevins also argue that the court erred by placing the burden of proving coverage on them because Allstate breached its duty to defend Johnson, Allstate's insured. Because the Langevins are neither insureds with respect to the Allstate policy nor Johnson's assignees, however, there is no basis for affording the Langevins any collateral benefits of Allstate's contractual duty to defend Johnson. *See Smith v. Allstate Ins. Co.*, 483 A.2d 344, 346 (Me. 1984) (observing that an injured party "has no judicially protectible interest" in the defense owed by the insurer to the insured). As we stated clearly in *Jacobi v. MMG Insurance Co.*, the judgment creditor has the burden of proof in a reach and apply action. 2011 ME 56, ¶ 14, 17 A.3d 1229.

[4] Allstate also contends on appeal that the court erred in concluding that the policy's contract exclusion did not apply to preclude coverage for the Langevins' claims. Allstate, however, did not file a cross-appeal. Because it failed to preserve its argument regarding the policy's contract exclusion, we do not address it on appeal. *See Lyle v. Mangar*, 2011 ME 129, ¶ 22, 36 A.3d 867 (declining to disturb a conclusion of the court when the appellee failed to file a cross-appeal); *Millien v. Colby Coll.*, 2005 ME 66, ¶ 9 n.3, 874 A.2d 397 (same).

6

[¶8]   Maine's reach and apply statute, 24-A M.R.S. § 2904, enables a judgment creditor to satisfy a judgment from the judgment debtor's insurer if "the judgment debtor was insured against such liability when the right of action accrued."[5] *Sarah G. v. Me. Bonding & Cas. Co.*, 2005 ME 13, ¶ 6, 866 A.2d 835. To resolve a reach and apply action, we first identify the basis of liability and damages from the underlying complaint and judgment. *Jacobi v. MMG Ins. Co.*, 2011 ME 56, ¶ 14, 17 A.3d 1229.   We then review "the homeowners insurance policy to determine if any of the damages awarded in the underlying judgment are based on claims that would be recoverable pursuant to the homeowners policy." *Id.* "[T]he party seeking to recover pursuant to the reach and apply statute . . . has the burden to demonstrate that [his] awarded damages fall within the scope of the insurance contract." *Id.*

[¶9]   We review "the interpretation of an insurance policy de novo." *Cox v. Commonwealth Land Title Ins. Co.*, 2013 ME 8, ¶ 8, 59 A.3d 1280.   We interpret

---

[5]   Title 24-A M.R.S. § 2904 (2012) provides in relevant part that:

> Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage.

It is undisputed that Johnson notified Allstate of the underlying complaint before the court entered judgment in favor of the Langevins.

unambiguous policy language consistent with its plain meaning and "construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder." *Id.*

[¶10] To begin our analysis, we must identify which of the damages sought in the underlying complaint constitute the $330,000 judgment. *See Jacobi*, 2011 ME 56, ¶ 14, 17 A.3d 1229; *Sarah G.*, 2005 ME 13, ¶¶ 3, 7, 866 A.2d 835. The judgment entered by the court, pursuant to the parties' agreement, does not specify the basis of Johnson's liability nor does it specify what damages the $330,000 award redresses. Thus, we turn to the underlying complaint. In that complaint, the Langevins pursued recovery of damages for loss of investment and physical problems with the property on a claim of negligent misrepresentation and damages for emotional distress on claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. So long as each claim permits recovery of the damages sought, we cannot rule out the possibility that the judgment awards damages for loss of investment, physical problems with the property, and emotional distress. Accordingly, we must determine whether the claims advanced in the underlying complaint permit recovery of the damages alleged and whether those damages are covered by the Allstate policy.

8

A.    Damages for Negligent Misrepresentation

[¶11]  The Langevins contend that any portion of the judgment awarded for their loss of investment and the undisclosed physical problems with the property on their negligent misrepresentation claim constitute covered "property damage." Negligent misrepresentation is a vehicle for asserting "claims for economic harm." Dan D. Dobbs, *Law of Remedies* § 9.1 at 544 (2d ed. 1993); *see also Jourdain v. Dineen*, 527 A.2d 1304, 1307 (Me. 1987) (observing that fraud actions "protect economic interests").  We define the tort of negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 18, 55 A.3d 443; *see also Chapman v. Rideout,* 568 A.2d 829, 830 (Me. 1990) (adopting the definition articulated in the Restatement (Second) of Torts § 552(1) (1977)).

[¶12]  Although it is clear from that formulation that the Langevins could recover their loss of investment through a negligent misrepresentation claim, such recovery is not available from Allstate because damages for loss of investment do not constitute "property damage."  *See Vigna v. Allstate Ins. Co.*, 686 A.2d 598,

600 (Me. 1996) ("Economic injury does not constitute 'property damage' for purposes of insurance coverage.").

[¶13]  To overcome that bar to coverage, the Langevins argue that because they also sought recovery for physical problems with the property, their damages for negligent misrepresentation fall within the policy's definition of "property damage."  That argument also fails because the physical problems with the property did not result from the "occurrence" alleged in the Langevins' negligent misrepresentation count.

[¶14]  The Allstate policy requires that any damages for "property damage" be caused by an "occurrence."  With respect to the Langevins' negligent misrepresentation count, the only factual allegation in their complaint that arguably constitutes an "occurrence" is Johnson's act of misrepresenting the condition of the property.  The Langevins' theory of damages is based solely on those misrepresentations.  Thus, to be compensable as "property damage," damages for the physical problems with the property must have resulted from Johnson's misrepresentations.  The summary judgment record, however, does not contain any support for that assertion.  Rather, any physical damage to the property resulted from its actual use as a junkyard, which, according to the underlying complaint, predates Johnson's statements regarding the condition of the property.  Therefore, damages for undisclosed physical problems are not covered by the policy because

10

those physical problems did not result from the "occurrence" alleged in the underlying complaint. *See Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 123-24 (1st Cir. 2000) (stating that, in order for harm suffered to be compensable as damages for negligent misrepresentation, the negligent misrepresentation must be the legal cause of the harm suffered); Restatement (Second) of Torts § 552B(1) (1977) (same). Accordingly, the court correctly determined that the Langevins failed to establish that their damages for loss of investment and physical problems with the property are covered by the Allstate policy.

B. Emotional Distress Damages

[¶15] This leaves only the Langevins' claim for emotional distress damages, which the trial court did not discuss.[6] The Langevins argue that (1) their claims for intentional infliction of emotional distress and negligence could support an award of emotional distress damages[7] and (2) emotional distress damages constitute "bodily injury" regardless of how that term is defined in the Allstate policy. We

_____

[6] It is not clear why the trial court did not discuss the Langevins' claim for emotional distress damages, and we note that neither party brought that omission to the court's attention. That notwithstanding, the court's omission is at most harmless error because of our ultimate conclusion that the Allstate policy does not cover the Langevins' emotional distress damages. *See* M.R. Civ. P. 61.

[7] As the Langevins recognize, their claim for negligent infliction of emotional distress cannot, on its own, provide for recovery of emotional distress damages when, as here, the Langevins did not plead bystander liability or some other special relationship. *Jacobi*, 2011 ME 56, ¶ 17, 17 A.3d 1229; *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18. Rather, there must be an independent tort that caused the emotional distress, and there must be coverage for that independent tort and for the damages it allegedly caused pursuant to the Allstate policy. *Jacobi*, 2011 ME 56, ¶ 17, 17 A.3d 1229. The independent tort cannot be negligent misrepresentation because that tort does not permit recovery for emotional harm. *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d 18.

need not decide, however, whether the Langevins' claims for intentional infliction of emotional distress and negligence could support recovery of their claimed emotional distress damages because such damages do not constitute "bodily injury" as that term is defined in the Allstate policy.

[¶16]   The Langevins contend that our decision in *Vigna* conclusively establishes that emotional distress constitutes "bodily injury" regardless of how that term is defined in an insurance policy.[8]  We disagree.  In *Vigna*, we held that Allstate had a duty to defend a couple against a complaint alleging emotional distress resulting from their failure to pay a contractor for home renovations. 686 A.2d at 599, 601.   Allstate had issued two policies to the couple, a homeowners policy and an umbrella policy. *Id.* at 599.  The homeowners policy provided coverage for "bodily injury . . . arising from an accident" and the umbrella policy provided "coverage for personal injury . . . caused by an occurrence." *Id.* at 599-600 (quotation marks omitted).  Based on the possibility, observed in *Maine Bonding & Casualty Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1081 (Me. 1991), that "bodily injury, sickness or disease" could result from emotional distress, we concluded that "[u]nless excluded, a claim for emotional

---

[8]   The Langevins also contend that our decision in *Jacobi* stands for the same proposition, but we did not discuss the question of whether emotional distress constituted "bodily injury" in *Jacobi*.  The outcome of that case turned on other policy language, and *Jacobi* does not, therefore, stand for the proposition that emotional distress constitutes "bodily injury" regardless of a policy's definition of "bodily injury." *Jacobi*, 2011 ME 56, ¶¶ 16, 18, 17 A.3d 1229.

distress triggers an insurer's duty to *defend* under 'bodily injury' coverage if the emotional distress is caused by an 'accident or occurrence' within the meaning of the policy." *Vigna*, 686 A.2d at 600 (emphasis added). *Vigna* did not establish that emotional distress always constitutes "bodily injury" when determining whether an insurer has a duty to indemnify. It determined that, given the allegations made in that complaint, and the language of the applicable policy, emotional distress could constitute "bodily injury" and, therefore, that the insurer was obligated to defend the claim. *Vigna*, 686 A.2d at 599-601.

[¶17] More recently, in *Ryder v. USAA General Indemnity Co.*, a couple sought a declaratory judgment to determine whether "their bystander claims for negligent infliction of emotional distress" constituted claims for "bodily injury" pursuant to a policy defining "bodily injury" as "bodily harm, sickness, disease or death." 2007 ME 146, ¶¶ 1, 6, 938 A.2d 4 (quotation marks omitted). Rather than holding that emotional distress always constitutes "bodily injury" regardless of the policy definition, we evaluated the policy's definition of that term and concluded that the term was ambiguous as a result of the definition's grammatical structure. *Id.* ¶ 17. In reaching that decision, we also noted that when a policy defined "bodily injury" as "injury [or harm], sickness or disease," a majority of jurisdictions have held that the definition is "unambiguous and encompasses only physical harm." *Id.* ¶ 15 (alteration in original). In short, we affirmed that the

question of whether a policy affords coverage for emotional distress still depends in the first instance on whether emotional distress constitutes "bodily injury" or some other type of damage for which coverage is available pursuant to the language of the policy.

[¶18]  The Allstate policy at issue here defines "bodily injury" in relevant part as "physical harm to the body, including sickness or disease, and resulting death."  Unlike the definition of "bodily injury" at issue in *Ryder*, this definition is unambiguous.  *See, e.g., Allstate Ins. Co. v. Russo*, 829 F. Supp. 24, 26 (D.R.I. 1993); *Black's Law Dictionary* 784 (9th ed. 2009) (defining "physical harm" as "[a]ny physical injury or impairment of land, chattels, or the human body").  The definition in this policy quite clearly restricts "bodily injury" to physical ailments and/or resulting death such that an ordinary person would understand that it does not encompass emotional pain and suffering.  *See Bryant*, 2012 ME 38, ¶ 9, 38 A.3d 1267 (stating that policy language is ambiguous if its meaning is not readily understandable by an ordinary person).  Because the Langevins' claim did not include any sort of bodily injury, physical harm, sickness or disease, and because the policy definition of "bodily injury" does not include emotional distress, the Allstate policy also does not cover any part of the judgment attributable to emotional distress damages.

The entry is:

Judgment affirmed.

_____

**On the briefs and at oral argument:**

Peter Clifford, Esq., Hodsdon & Clifford, LLC, Kennebunk, for appellants Cora P. Langevin and Patrick Langevin

Martica S. Douglas, Esq., Douglas, Denham, Buccina & Ernst, Portland, for appellee Allstate Insurance Company

Cumberland County Superior Court docket number CV-2011-340
FOR CLERK REFERENCE ONLY