STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-RE-16-13

COASTAL REALTY CAPITAL, LLC,

  Plaintiff,

  v.

FOUR CITY CENTER PROPERTIES, LLC
and JEROME C. ADE,

  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON MOTIONS FOR
SUMMARY JUDGMENT**

  Defendants Four City Center Properties, LLC and Jerome C. Ade move for summary judgment in their favor on all of Plaintiff Coastal Realty Capital, LLC's claims and on Counts I and II of their counterclaims. Plaintiff opposes summary judgment on its claims and cross-moves for summary judgment on all of Defendants' counterclaims. Based on the following, Defendants' motion for summary judgment on all of Plaintiff's claims is granted. Defendants' motion for summary judgment on Counts I and II of their counterclaims is denied. Coastal's motion for summary judgment on Defendants' counterclaims is granted as to Counts I and III. Count II of Defendants' counterclaim is dismissed as moot.

## I. BACKGROUND

  Defendant Four City Center Properties, LLC ("FCC") owns the land and building located at 4 City Center in Portland, Maine (the "Property"). (Defs. Supp'g S.M.F. ¶ 1; Pl. Opp. S.M.F. ¶ 1.) Defendant Jerome C. Ade is the sole member and owner of FCC. (Pl. Add'l S.M.F. ¶ 43; Defs. Reply S.M.F. ¶ 43.) On March 10, 2014, Plaintiff Coastal Realty Capital, LLC ("Coastal") entered into a commercial lease agreement with FCC for the entire third and fourth floors of the

building at 4 City Center (the "Lease"). (Defs. Supp'g S.M.F. ¶ 3; Pl. Opp. S.M.F. ¶ 3.) The Lease contained an integration clause stating:

> All negotiations, considerations, representations and understandings between LANDLORD and TENANT are incorporated herein and no prior agreements or understandings, written or oral, shall be effective for any purpose. No provision of this Lease may be modified or altered except by agreement in writing between LANDLORD and TENANT, and no act or omission of any employee or agent of LANDLORD shall alter, change, or modify any provision hereof.

(Defs. Ex. 1 ¶ 28.) Under the Lease, Coastal had the right to purchase the entire Property from FCC for $1,600,000.00 within the first year of the Lease (the "Purchase Option"). (*Id.* ¶ 30.) The Lease commenced on April 1, 2014. (Pl. Add'l S.M.F. ¶ 37; Defs. Reply S.M.F. ¶ 37.) Thus, under the original terms of the Lease, Coastal had until April 1, 2015, to exercise its Purchase Option. (*Id.* ¶ 38.)

Defendants assert that, on or about the fall 2014, Ade, on behalf of FCC, met with Shawn Lyden, the President of Coastal, to determine whether Coastal intended to exercise the Purchase Option. (Defs. Supp'g S.M.F. ¶ 6.) Defendants contend Lyden stated that Coastal did not want to be in the landlord business and did not have the funds to purchase the Property. (*Id.* ¶ 8.) Defendants contend that Ade asked Lyden what Coastal did for business and Lyden explained that Coastal loaned money. (*Id.* ¶ 9.) According to Defendants, Lyden told Ade that Coastal could get a 10% return on an investment and asked Ade if he wanted to invest $50,000.00 in Coastal. (*Id.* ¶ 10.) Defendants assert that Ade stated that he would think about an investment. (*Id.* ¶ 11.) Defendants contend there was never an agreement that FCC, or Ade personally, would invest in Coastal in exchange for Coastal's release of the Purchase Option. (*Id.* ¶ 12.)

Coastal disputes Defendants' assertions. Coastal asserts that it always intended to purchase the Property and that Lyden consistently represented Coastal's intent to exercise the Purchase Option to Ade over the course of several conversations in the fall of 2014. (Pl. Add'l

2

S.M.F. ¶¶ 32, 41.) Coastal asserts it was Ade that proposed that either he or FCC would invest $50,000.00 in Coastal, if Coastal would release the Purchase Option. (*Id.* ¶¶ 42, 45-46, 48.)

On November 19, 2014, Lyden sent an email to Ade regarding Ade's and/or FCC's potential investment in Coastal and Coastal's release of the Purchase Option. (Defs. Supp'g S.M.F. ¶ 13; Pl. Opp. S.M.F. ¶ 13.) Attached to the email were a set of documents for investing in Coastal that included blank spaces for the name of the investor and the amount of the investment. (*Id.* ¶ 14.) Lyden's email also requested, as part of the release of the Purchase Option, that Coastal be given a right of first refusal on any available space in the building and a right of first refusal to purchase the Property. (*Id.* ¶ 15.) On November 20, 2014, Lyden sent an email to Ade in which Lyden made reference to his decision not to purchase the Property. (Defs. Ex. 6.)

On November 25, 2014, Ade went to Coastal's office and presented a Termination of Option Agreement (the "Termination Agreement") to Coastal's Vice President, Dan McCarron. (Pl. Reply S.M.F. ¶ 51.) Lyden was in Florida at that time. (Pl. Add'l S.M.F. ¶ 50; Defs. Reply S.M.F. ¶ 50.) McCarron read the Termination Agreement to Lyden over the phone. (Pl. Opp. S.M.F. ¶ 25.) The Termination Agreement provided:

> In consideration of one dollar and other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged, paid by each to the other, **FOUR CITY CENTER PROPERTIES, LLC** (the "Landlord") and **COASTAL REALTY CAPITAL, LLC** (the "Tenant") hereby terminate, release, and forever discharge each other, their respective agents, representatives, heirs and assigns, of and from any and all claims, debts, demands, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, agreements, torts, promises, doings, omissions, variances, damages, liabilities, obligations, controversies, charges and complaints arising out of or in connection with that certain Purchase Option contained in a certain lease (the "Lease") between the parties dated March 10, 2014, concerning a portion of the real property located at 4 City Center, Portland, Cumberland County, Maine.

3

Apart from the provisions of this Agreement, no promise, inducement, or agreement has been made between the parties the subject matter of this Lease, other than the following:

1.     All other terms and condition of the Lease remain in full force and effect and are not affected by this release.

(Defs. Ex. 7) (emphasis in original). The Termination Agreement also contained two handwritten terms granting a right of first refusal for vacant space in the building and a right of first refusal for sale of the Property. (*Id.*) The handwritten provisions were initialed by Ade and McCarron and dated November 25, 2014. (*Id.*) The Termination Agreement contained no references to any investment in Coastal by Ade or FCC. (*Id.*) The Termination Agreement was signed by Ade on behalf of FCC and McCarron on behalf of Coastal on November 25, 2014. (*Id.*) Coastal concedes that McCarron executed the Termination Agreement on behalf of Coastal at Lyden's direction. (Pl. Add'l S.M.F. ¶ 59.)

Ade never signed or returned the investment documents email to him on November 19, 2014. (Defs. Supp'g S.M.F. ¶ 28; Pl. Opp. S.MF. ¶ 28.) Neither Ade nor FCC made any investment in Coastal. (Pl. Add'l S.M.F. ¶ 61; Defs. Reply S.M.F. ¶ 61.)

Coastal asserts that Lyden felt pressured to execute the Termination Agreement. (Pl. Add'l S.M.F. ¶ 51.) Coastal contends that Lyden believed that Ade intended to invest in Coastal in January 2015 and that was an agreement to invest in Coastal in exchange for the release of the Purchase Option. (*Id.* ¶¶ 58-59.) Coastal asserts that it would not have agreed to release the Purchase Option had there not been an agreement that Ade would invest in Coastal in exchange. (*Id.* ¶ 60.)

Coastal filed a six-count complaint against FCC and Ade seeking rescission of the Termination Agreement and declaratory judgment on April 13, 2016. Defendants filed an answer and three-count counterclaim for breach of contract and fraud on June 27, 2016. This

4

case was then transferred to the Business and Consumer Court. On January 25, 2017, Defendants filed a motion of summary judgment on all of Coastal's claims and on Counts I and II of their counterclaims. Coastal filed an opposition to Defendants' motion and a cross-motion for summary judgment on all of Defendants' counterclaims on February 17, 2017. Defendants filed a reply and opposition to Coastal's cross-motion on March 8, 2017. Coastal filed a reply on March 15, 2017. Oral argument was held on March 23, 2017.

## II.    STANDARD OF REVIEW

Either party may move for summary judgment on all or part of a claim. M.R. Civ. P. 56 (a)-(b). Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. M.R. Civ. P. 56(e); *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021. When a defendant moves for summary judgment and its motion is properly supported, the burden shifts to the plaintiff to respond with specific facts establishing a prima facie case for each element of the claim challenged by the defendant. M.R. Civ. P. 56(e); *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234. When a party moves for summary judgment on its claims, the moving party must establish each element of its claim

without dispute as to any material fact in the record. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015. If the moving parties motion for summary judgment is properly supported, the burden shifts to the defendant to respond with specific facts indicating a genuine issue for trial. M.R. Civ. P. 56(e). In either case, if the non-moving party fails to present sufficient evidence of the challenged elements, the moving party is entitled to a summary judgment. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*." *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 19, 116 A.3d 466 (internal citation and quotation marks omitted). The court reviews the record for each motion for summary judgment separately in the light most favorable to the non-moving party. *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. Even if one party's version of the facts appears more credible and persuasive, any genuine issue of material fact must be resolved by the fact finder, regardless of the likelihood of success. *Estate of Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. Summary judgment is also an appropriate devise for isolating dispositive questions of law. *Magno v. Town of Freeport*, 486 A.2d 137, 141 (Me. 1985).

## III. ANALYSIS

### A.    Coastal's Claims for Fraud in the Inducement and Negligent Misrepresentation

Counts I and III of Coastal's complaint seek rescission of the Termination Agreement and a determination that Coastal has not waived its right to exercise the Purchase Option on account of fraudulent misrepresentations by FCC and/or Ade. (Compl. ¶¶ 27-34, 41-48.) To establish a claim for fraud in the inducement in order to rescind a contract, the plaintiff must prove by clear and convincing evidence: (1) that the defendant made a false representation; (2)

6

the representation was of a material fact; (3) the representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false; (4) the representation was made for the purpose of inducing the plaintiff to act in reliance upon it; and (5) the plaintiff **justifiably relied upon the representation** as true to the plaintiff's detriment. *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280 (emphasis supplied). Although the parol evidence rule ordinarily bars consideration of extrinsic evidence where there is an integrated contract, the parol evidence rule does not prevent a party from introducing extrinsic evidence of fraud in order to vitiate a contract. *Harriman v. Maddocks*, 518 A.2d 1027, 1029-30 (Me. 1986).

Counts II and IV of Coastal's complaint seek rescission of the Termination Agreement and a determination that Coastal has not waived its right to exercise the option to purchase based on alleged negligent misrepresentations by FCC and/or Ade.[1] (Compl. ¶¶ 35-40, 49-54.) Similarly, to establish a claim for negligent misrepresentation, a plaintiff must prove that (1) in the course of a business, profession, employment or any other transaction in which the defendant has a pecuniary interest; (2) the defendant supplied false information; (3) for the guidance of others in the business transactions; (4) and the defendant failed to exercises reasonable care or competence in obtaining or communicating the information; (5) causing the plaintiff **to**

---

[1] Our Law Court has not decided whether negligent misrepresentation is a basis for rescission of a contract. The Law Court has only recognized negligent misrepresentation as a tort for the recovery of economic damages. *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 11, 66 A.3d 585. The Restatement appears to suggest that a negligent misrepresentation may vitiate a contract if the representation is material. Restatement (Second) of Contract, § 164 (1981) ("If a party's manifestation of assent is induced by **either a fraudulent or a material misrepresentation** by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." (emphasis supplied)). However, courts from other jurisdictions have suggested that, although intentional fraud may vitiate a contract, a party's failure to exercise due care does not justify the court's intrusion upon the contractual relationship. *See Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 429-34, 737 N.E.2d 920, 923-26 (2000). Because this court finds that, as a matter of law, any reliance by Coastal was not justifiable, the court need not decide this issue.

**justifiably rely upon the information** as true to the plaintiff's detriment. *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 18, 55 A.3d 443 (emphasis supplied).

As discussed above, Coastal asserts that Ade proposed that either he or FCC would invest $50,000.00 in Coastal, if Coastal would release the Purchase Option. (Pl. Add'l S.M.F. ¶¶ 42, 45-46, 48.) Coastal contends that Lyden believed that Ade intended to invest in Coastal in January 2015 in exchange for the release of the Purchase Option and that Coastal would not have executed the Termination Agreement had there not been an agreement that Ade would invest in Coastal in exchange. (*Id.* ¶¶ 58-60.)

Even if Coastal's assertions of fact are true, Coastal's reliance on any misrepresentations by FCC or Ade are not justifiable as a matter of law. In *Barr v. Dyke*, the parties executed a stock purchase agreement as part of a settlement. 2012 ME 108, ¶ 4, 49 A.3d 1280. The stock purchase agreement contained a disclaimer of reliance clause expressly stating:

> (iv) Such Seller *has not relied* on Purchaser or any of its directors, officers, shareholders, employees or agents with respect to any assessment of the value of Purchaser or the Shares being sold by such Seller hereunder or the advisability of entering into this Agreement and the transactions contemplated by it.

*Id.* (emphasis in original). The sellers brought a complaint seeking, among other relief, rescission of the stock purchase agreement for fraud in the inducement. *Id.* ¶ 6. The sellers asserted that they would not have entered into the agreement but for misrepresentations by the defendants, including representations regarding the approximate value of the company. *Id.* ¶ 9. The Law Court concluded that the sellers could not prove justifiable reliance on the alleged misrepresentations. *Id.* ¶ 17. The Law Court stated:

> [Plaintiffs] specifically disclaimed reliance on [defendants'] representations related to the value of the [company] stock. Our analysis would ordinarily end here. **The contract was clear and complete, and the disclaimer of reliance was explicit and covered the claims at issue here.**

8

*Id.* (emphasis supplied). The Law Court went on state that, as a public policy matter, courts of other jurisdictions have generally favored the enforcement of disclaimer of reliance clauses where parties are experienced businesspersons and the contract is neither a consumer-based contract nor a contract of adhesion. *Id.* ¶¶ 18-24. The Law Court also announced several factors courts should consider for determining the enforceability of a disclaimer of reliance clause when a party has alleged fraud by a fiduciary. *Id.* ¶ 27.

The interpretation of an unambiguous contract is a question of law for the court. *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me. 1996). When interpreting an unambiguous contract, the court looks to the plain language of the contract in order to effectuate the party's intent. *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457. Here, the Termination Agreement unambiguously states:

> Apart from the provisions of this Agreement, no promise, inducement, or agreement has been made between the parties the subject matter of this Lease, other than the following:
>
> 1. All other terms and condition of the Lease remain in full force and effect and are not affected by this release.

(Defs. Ex. 7.) The court sees no reason why this disclaimer of inducement provision should not be enforced to bar Coastal's claims just like the disclaimer of reliance clause in *Barr v. Dyke*. The disclaimer of inducement expressly disclaims any extrinsic promise, inducement, or agreement between the parties. Like the disclaimer of reliance in *Barr v. Dyke*, the disclaimer of inducement expressly covers the claims brought by Coastal, that FCC or Ade made extrinsic promises or agreements to induce Coastal to execute the Termination Agreement. Moreover, the court sees no public policy reasons for declining to enforce the disclaimer. Like the contract in *Barr v. Dyke*, the Termination Agreement is neither a consumer-based contract nor a contract of adhesion. There is no dispute parties in this matter are sophisticated business entities and

9

individuals. (Defs. Supp'g S.M.F. ¶¶ 1-2, 9-9A; Pl. Opp. S.M.F. ¶¶ 1-2, 9-9A.) There is also no fiduciary relationship between the parties justifying any additional considerations.

Therefore, because the Termination Agreement expressly disclaims the type of promise, inducement, or agreement alleged by Coastal, Coastal cannot demonstrate justifiable reliance as a matter of law. Accordingly, Coastal is not entitled to rescission based on either fraud in the inducement or negligent misrepresentation.

B.     Coastal's Claim for Promissory Estoppel

Count V of Coastal's complaint also seeks rescission of the Termination Agreement and a determination that Coastal has not waived its right to exercise the Purchase Option based on promissory estoppel.[2] (Compl. ¶¶ 55-58.) Our Law Court has adopted the Restatement's formulation for claims of promissory estoppel:

> A promise which the promisor should **reasonably expect to induce action** or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Daigle Commer. Grp., Inc. v. St. Laurent*, 1999 ME 107, ¶ 14, 734 A.2d 667 (emphasis supplied); *see* Restatement (Second) of Contracts § 90(1).

For the same reasons as discussed above, even if Coastal's assertions of fact are true, Coastal cannot demonstrate that Ade or FCC should have reasonably expected any promises to induce Coastal to execute the Termination Agreement. As discussed above, the Termination Agreement expressly disclaims any extrinsic promises between the parties. (Defs. Ex. 7.) Therefore, Coastal is not entitled to any relief based on promissory estoppel.

---

[2] Plaintiff has cited no authority for the proposition that a plaintiff may obtain rescission of a contract based on promissory estoppel. By its terms, promissory estoppel is an equitable claim to **enforce a promise** if necessary to avoid injustice. *Daigle Commer. Grp., Inc.*, 1999 ME 107, ¶ 14, 734 A.2d 667; Restatement (Second) of Contracts § 90(1). Because the courts finds that, as a matter of law, FCC could not have reasonably expected the alleged promises to induce Coastal, the court need not decide this issue.

10

C.    Coastal's Claim for Declaratory Judgment

Count VI of Coastal's complaint seeks a declaratory judgment that FCC and/or Ade entered into an enforceable contract with Coastal whereby FCC and/or Ade would make an investment in Coastal in exchange for Coastal's release of the Purchase Option. (Compl. ¶¶ 59-61.) Coastal further requests the court declare that Coastal's obligations under the contract have been rendered voidable due to FCC's and Ade's actions and that Coastal has not waived its right to exercise the Purchase Option. (*Id.*) Maine's Declaratory Judgment Act provides that any interested party may seek a declaration regarding the validity or construction of a contract and a determination of their rights, status, or legal relationship thereunder. *See* 14 M.R.S.§§ 5953-55.

Again, the Termination Agreement expressly and unambiguously disclaims any extrinsic promise, inducement, or agreement between the parties apart from the provisions contained in the Termination Agreement. (Defs. Ex. 7.) Thus, as a matter of law, there was no agreement that FCC and/or Ade was to make an investment in Coastal in exchange for executing the Termination Agreement. Accordingly, Coastal is not entitled to declaratory judgment.

Therefore, based on the foregoing, Defendants are entitled to summary judgment on all of Coastal's claims for rescission and declaratory judgment.

D.    Defendants' Counterclaims for Breach of Contract

Counts I and II of Defendants' counterclaims seek damages and specific performance for breach of the Lease and Termination Agreement. (Countercl. ¶¶ 16-24.) Defendants assert that they are entitled to summary judgment on both claims. (Defs. Mot. Summ. J. 12-13.) Coastal has cross-moved for summary judgment on Defendants' counterclaims on the grounds that Defendants' fraud vitiates the Termination Agreement. (Pl. Opp'n Defs. Mot. Summ. J. 13-14.)

11

As discussed above, Coastal is not entitled to rescission of the Termination Agreement. Therefore, Coastal is not entitled to summary judgment on grounds asserted in its cross-motion.

Regarding Defendants' motion, Defendants assert the Termination Agreement is an amendment to the Lease obligating each party to release the other from the Purchase Option and, by bringing a complaint for rescission and declaratory judgment, Coastal has breached the terms of both the Termination Agreement and the Lease. (Defs. Mot. Summ. J. 12-13.) Defendants also assert that, pursuant to the terms of the Lease, Coastal agreed not to hold Ade personally liable under the Lease. (*Id.* at 13.) Defendants argue that by bringing this action against Ade, in addition to FCC, Plaintiff has also breached that term of the Lease. (*Id.*)

As discussed above, the interpretation of an unambiguous contract is a question of law for the court. *Thayer Corp.*, 675 A.2d at 516. The court looks to the plain language of the contract in order to effectuate the party's intent. *Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457. First, the Lease's limitation of liability provision expressly provides:

> TENANT agrees to look solely to LANDLORD'S interest in the building for recovery of any judgment from LANDLORD arising from breach of this lease, it being agreed that LANDLORD is not personally liable for any such judgment. The provision contained in the foregoing sentence shall not limit any right that TENANT might otherwise have to obtain an injunctive relief against LANDLORD or LANDLORD'S successors in interest, or any other action not involving the personal liability of LANDLORD.

(Defs. Ex. 1 ¶ 23.) Pursuant to the express terms of the Lease, "LANDLORD" refers only to FCC, not Ade. (*Id.* ¶ 1.) The Lease further provides that "LANDLORD" means only the persons or persons, natural or corporate, named as Landlord and its "heirs executors, administrators, successors, and assigns." (*Id.* ¶ 28.) Therefore, the Lease's limitation of liability provision limits only FCC's liability for damages, not Ade's. Moreover, Coastal has not brought any claims for breach of the Lease or for damages against FCC or Ade. Therefore, the limitation

12

of liability provision does not apply to Coastal's claims. Thus, Coastal has not breached the Lease by asserting claims against Ade.

Second, regarding Defendants' counterclaim for damages for breach of the Termination Agreement, Defendants have not claimed any damages other than their attorney fees incurred in defending and prosecuting this action. (Defs. Mot. Summ. J. 12-13; Defs. Supp'g S.M.F. ¶ 29.) Attorney fees may be collected as an element of damages for breach of contract where the parties have provided so as part of their agreement and the requested sum is reasonable. *Interstate Indus. Unif. Rental Serv., Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 923 (Me. 1976). The Termination Agreement contains no provisions providing for attorney fees. (Defs. Ex. 7.) The Lease provides:

> TENANT shall also pay LANDLORD'S expenses, including reasonable attorneys' fees, incurred by LANDLORD in enforcing any obligation, covenant or agreement of this lease. The provisions of this paragraph shall survive the termination or earlier expiration of the term of this lease.

(Defs. Ex 1 ¶ 16.) Defendants assert the Termination Agreement was an amendment to the Lease. (Defs. Mot. Summ. J. 12-13; Defs. Supp'g S.M.F. ¶ 19.) By its express terms, the Lease's attorney fees provision obligates Coastal to pay only those attorney fees incurred by FCC "in enforcing any obligation, covenant or agreement **of this lease**." (Defs. Ex 1 ¶ 16) (emphasis supplied). The Lease's attorney fees provision makes no reference attorney fees incurred by FCC in enforcing any obligation, covenant, or agreement contained in an amendment to the Lease. (*Id.*) Thus, by its plain terms, the Lease's attorney fees provision does not permit FCC to collect attorney fees incurred in enforcing the Termination Agreement. Because Defendants have not asserted any other damages, Coastal is entitled to summary judgment on Defendants' counterclaim for damages for breach of contract.

13

Third, regarding Defendants' counterclaim for specific performance, Defendants ask the court to order the specific performance of the Termination Agreement against Coastal, particularly the provisions releasing and forever discharging FCC from any and all claims relating to the Purchase Option. (Countercl. ¶¶ 22-24.) Because the court has enforced the disclaimer of inducement provision contained in the Termination Agreement and entered summary judgment against Coastal on its claims against FCC and Ade, Defendants counterclaim for specific performance of the Termination Agreement is moot. *See Dodge v. United Servs. Auto. Asso.*, 417 A.2d 969, 975 (Me. 1980) (affirming the trial court's decision that ruling on defendant's counterclaim for specific performance of an agreement was unnecessary since effectively the same result had already been reached by the court's disposition of plaintiff's claims against defendant).

E.      Defendants' Counterclaim for Fraud

Count III of Defendants' counterclaim asserts a claim for fraud. (Countercl. ¶¶ 25-33.) Defendants assert that Coastal fraudulently induced Defendants to spend funds to improve the Property. (Defs. Reply to Pl. Opp'n to Defs. Mot. Summ. J. 10-11.) Defendants assert that it would not have proceeded with construction on the Property until Coastal released its Purchase Option. (Defs. Add'l S.M.F. ¶ 68.) Defendants argue that Coastal misrepresented in its intentions and that, by now bringing a complaint for rescission of the Termination Agreement and a declaratory judgment, Coastal is seeking to capitalize on Defendants' improvements to the building. (Defs. Reply to Pl. Opp'n to Defs. Mot. Summ. J. 10-11.)

To obtain damages for fraud, a plaintiff must demonstrate by clear and convincing evidence: (1) the defendant a made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of its truth or falsity; (4) for the purpose of

14

inducing the plaintiff to act in reliance upon it; and (5) the plaintiff justifiably relied upon the fact as true to their detriment. *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 12, 942 A.2d 707. Because the court has concluded that Coastal is not entitled to rescission of the Termination Agreement under any of its theories, Defendants have not suffered any damages as a result of Coastal's alleged misrepresentations under its theory of fraud. Thus, Coastal is entitled to summary judgment on Count III of Defendants' counterclaims.

## IV. CONCLUSIONS

Defendants Four City Center Properties, LLC and Jerome C. Ade's motion for summary judgment on all of Plaintiff Coastal Reality Capital, LLC's claims is GRANTED.

Defendants Four City Center Properties, LLC and Jerome C. Ade's motion for summary judgment on Counts I and II of their counterclaims against Plaintiff Coastal Reality Capital, LLC is DENIED.

Plaintiff Coastal Reality Capital, LLC's motion for summary on Defendants Four City Center Properties, LLC and Jerome C. Ade's counterclaims is GRANTED as to Counts I and III.

Count II of Defendants Four City Center Properties, LLC and Jerome C. Ade's counterclaims is DISMISSED as moot.

Pursuant to Maine Rule Civil Procedure 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated   5/17/17

**M. Michaela Murphy**
**Justice, Business and Consumer Court**

15