2012 ME 7

**Mark COOKSON**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued: Dec. 12, 2011.
Decided: Jan. 24, 2012.

Thomas G. Van Houten, Esq. (orally), Springvale, for appellant Mark Cookson.

John S. Whitman, Esq., and Heidi J. Hart, Esq. (orally), Richardson, Whitman, Large & Badger, Portland, for appellee Liberty Mutual Fire Insurance Company.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

Dissent: SILVER, and JABAR, JJ.

MEAD, J.

[¶ 1] Mark Cookson appeals from the judgment of the Superior Court (York County, *Brennan, J.*) granting Liberty Mutual Fire Insurance Company's motion for summary judgment. Cookson argues that the court erred in concluding that his homeowner's insurance policies excluded an item of heavy construction machinery, his Case 590M tractor, from loss coverage. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The facts of this case were not disputed on summary judgment. In 2004, Mark Cookson purchased a home in West Newfield that served as his primary residence. In May 2005, Cookson purchased a used Case 590M tractor with front bucket and backhoe attachments for approximately $27,000. In December 2005, he was given a parcel of land in Acton where he began constructing a house the following year.

[¶ 3] Cookson used his Case 590M to dig, move earth, and remove snow at both properties. The Case 590M had one seat, the operator's seat, and could reach a speed of twenty-five miles per hour. Cookson drove the tractor along public roads between the West Newfield and Acton properties, an estimated distance of three to four miles, and to his father's property, also in Acton. On December 22, 2007, the Case 590M was destroyed by fire while it was parked at his father's property.

[¶ 4] Cookson purchased a homeowner's insurance policy from Liberty Mutual in March 2007 to cover his residence in West Newfield. In June 2007, Cookson purchased a second homeowner's insurance policy from Liberty Mutual to cover the Acton property, where he was constructing a house. The relevant provisions of both policies are identical. The personal property provisions exclude "[m]otor vehicles or all other motorized land conveyances" from coverage. However, there is an exception to the exclusion: "We do cover vehicles or conveyances not subject to motor vehicle registration which are: a. Used to service an 'insured's' residence."

[¶ 5] On December 24, 2007, Cookson filed a claim for loss of the Case 590M with Liberty Mutual pursuant to the West Newfield and Acton policies. Liberty Mutual sent Cookson a letter dated February 29, 2008, denying his claim based on the personal property exclusion. Later, Cookson filed a complaint in the Superior Court seeking, in part, a declaratory judgment that the Liberty Mutual policies provided coverage for his Case 590M.

[¶ 6] Liberty Mutual filed a motion for summary judgment on August 25, 2010, and the court heard arguments on the motion on March 17, 2011. The court granted Liberty Mutual's motion by written order on March 22, 2011. The court first examined whether Cookson's Case 590M was a "motor vehicle" or "motorized land conveyance" within the meaning of the personal property exclusion. The court noted that 29-A M.R.S. § 101(82) (2011) defined "tractor" as "a motor vehicle used primarily off the highway" and referenced decisions from other jurisdic-

tions where items of heavy construction machinery similar to Cookson's Case 590M were found to meet the definition of "vehicle" pursuant to other insurance contracts. The court concluded that Cookson's Case 590M was a motorized, self-propelled vehicle for purposes of the personal property exclusion.

[¶ 7] The court then determined whether Cookson's Case 590M fell within the exclusion's exception for "vehicles or conveyances not subject to motor vehicle registration which are: a. Used to service an 'insured's' residence." Citing our decision in *Kimball v. New England Guaranty Insurance Co.*, 642 A.2d 1347 (Me.1994), the court concluded that "subject to motor vehicle registration" was an unambiguous phrase that was concerned with specific types of vehicles rather than a fact-specific inquiry as to whether a given vehicle must be registered based on its use. The court found that Cookson's Case 590M was "subject to motor vehicle registration" because 29-A M.R.S. § 509 (2011) provides for the registration of tractors and therefore it did not fall within the exclusion's exception. On that basis, the court concluded that Cookson's Case 590M was not covered by his homeowner's insurance policies and, as a result, granted Liberty Mutual's motion for summary judgment.

## II. DISCUSSION

[¶ 8] We review the grant of summary judgment de novo to determine whether the prevailing party was entitled to judgment as a matter of law. *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 6, 942 A.2d 1213. "The interpretation of an insurance contract is also a matter of law reviewed de novo." *Id.* Further, we evaluate the instrument as a whole considering all parts and clauses to determine "if and how far one clause is explained, modified, limited or controlled by the others." *Id.* ¶ 10. Unambiguous language in an insurance contract must be interpreted "according to its plain and commonly accepted meaning." *Me. Drilling & Blasting, Inc. v. Ins. Co. of N. Am.*, 665 A.2d 671, 675 (Me.1995) (quotation marks omitted).

[¶ 9] The personal property provision at issue here is an exception that limits and modifies the broad exclusion of all "[m]otor vehicles or all other motorized land conveyances" from coverage. We have expressly held that the phrase "subject to motor vehicle registration" is unambiguous. *Kimball*, 642 A.2d at 1348–49. In *Kimball*, we found that notwithstanding that a pickup truck was unregistered, unfit for inspection, and intended to be used only to plow snow from a driveway, it clearly fell within the phrase "subject to motor vehicle registration." *Id.* We explained that "[t]he exception to the policy exclusion defines a *type* of vehicle, and is not concerned with fact-specific analyses of whether a *particular* vehicle will or will not be registered." *Id.* at 1349. In reaching our conclusion, we noted that a pickup truck "exposes an insurer to risks not contemplated by the use of a riding lawnmower or a small residential tractor." *Id.*

[¶ 10] Cookson seizes upon the language in the last sentence and argues that *Kimball* recognized residential tractors as a specific type of vehicle that would fall within the exception to the personal property exclusion and therefore his homeowner's insurance policies provide coverage for his Case 590M tractor.[1] We disagree.

---

1. The record establishes that the Case 590M tractor bears no resemblance, in appearance or capability, to riding lawnmowers or small residential tractors. The photograph of a virtually identical Case 590 clearly depicts a substantial piece of heavy-duty construction equipment.

[¶ 11] Whether a vehicle is "subject to motor vehicle registration" within the meaning of a homeowner's insurance policy is a determination based on the type of vehicle at issue; the intended or actual use of that vehicle is irrelevant. *Id.* Although 29–A M.R.S. § 351 (2011) generally requires the registration of any vehicle that is "operated or remains on a public way," such an all-encompassing provision does not control whether a vehicle is "subject to motor vehicle registration" for purposes of a homeowner's insurance policy.

[¶ 12] In *Kimball* we found that the pickup truck at issue was "subject to motor vehicle registration" regardless of whether it had been or was intended to be operated or maintained on a public way. Therefore, the proper inquiry in this case is whether Cookson's Case 590M tractor with front bucket and backhoe attachments falls within the class of vehicles that are of the *type* that are reasonably understood to be "subject to motor vehicle registration."

[¶ 13] Tractors are commonly operated on public ways in this state. Cookson's own use of his Case 590M along public ways for several miles on a number of occasions is evidence of this reality. Additional support for this notion is found in title 29–A's requirement that tractors be registered, with limited exceptions only for those types of tractors that are used almost exclusively off of public ways. *See* 29–A M.R.S. §§ 509–510 (2011). The obvious import of such a statutory scheme is that the operation of tractors on public ways is a reasonably anticipated occurrence.

[¶ 14] Simply because a motorized device *can* be registered does not necessarily make it the *type* that is "subject to motor vehicle registration" within the meaning of the insurance policy. For example, title 29–A provides that riding lawnmowers may be operated on public ways at the election of an operator who applies for and is issued a special registration permit. *See* 29–A M.R.S. § 501(8) (2011) ("The Secretary of State may issue, on application and the payment of a fee of $4, a special registration permit authorizing the limited operation on the highway of self-propelled . . . lawn mowers."). A vehicle that can be permitted to operate in a limited capacity on a public way is distinguishable from a vehicle that is generally required to be registered on an annual basis because of its frequent presence on public ways. *Compare id.,* *with* 29–A M.R.S. § 509(1) (2011) ("The annual fee for the registration of a tractor must accompany an application for registration."). Whereas the latter is required to be registered on an annual basis, the former only comes within the purview of the motor vehicle registration laws at the election of the operator.

[¶ 15] Furthermore, a Case 590M, with its potential for frequent operation on public ways at speeds of up to twenty-five miles per hour, "exposes an insurer to risks not contemplated by the use of a riding lawnmower or a *small residential* tractor." *Kimball,* 642 A.2d at 1349 (emphasis added). The operation of a tractor on a public way subjects it to dangers that are not associated with the risks and hazards contemplated by a homeowner's insurance policy. *Cf. Bowen v. Hanover Ins. Co.,* 599 A.2d 1150, 1151 (Me.1991) (explaining that "motor vehicles are inherently dangerous instrumentalities and homeowners policies generally do not contemplate coverage of injuries when the vehicle is maintained or used in one of its inherently dangerous capacities" (quotation marks omitted)).

[¶ 16] Moreover, although the trial court did not address the issue, we recognize that the exception to the personal property exclusion must be read in the conjunctive—both provisions must be pres-

ent for Cookson's Case 590M to be covered. The exception provides coverage for vehicles "not subject to motor vehicle registration which are: a. Used to service an 'insured's' residence." Because the first provision defines a type of vehicle, we interpret the second provision as placing a further qualification on the type of vehicle at issue and do not engage in a fact specific inquiry as to whether a given vehicle was in fact used to service an insured's residence.

[¶ 17] For purposes of the exception to the personal property exclusion, the phrase "used to service an 'insured's' residence" includes those motorized devices not subject to motor vehicle registration that the average homeowner would commonly employ in servicing his or her residence. Such examples, though certainly not exhaustive, would include riding lawnmowers, self-propelled snow-blowers, and similar motorized devices.

[¶ 18] Although Cookson used his heavy construction machinery to dig, move earth, and remove snow from his properties, such use is irrelevant in determining whether his Case 590M is the type of vehicle that is commonly used to service a homeowner's residence. Cookson's Case 590M is an item of heavy construction machinery that is used almost exclusively for commercial construction projects. The average homeowner would not purchase an item of heavy construction machinery for approximately $27,000 simply to remove snow and earth from their residence. Such use does not transform an item of heavy construction machinery into the type of motorized device that a homeowner would commonly employ to service his or her residence. To hold otherwise would allow, on the one hand, such commercial devices as motorized blueberry harvesters or construction excavators to fall within the exception to the personal property exclusion simply because they were em-

ployed at one time to service an insured's residence in some capacity that is incidental to their primary purpose, and on the other hand, would prohibit a riding lawnmower from being covered under the exception if it was destroyed by fire before the homeowner had actually in fact used it to cut grass at his or her residence. *See Bumgardner v. Terra Nova Ins. Co.*, 806 So.2d 945, 949–50 (La.Ct.App.2002) (finding that a tractor that was occasionally used at the insured's property was not "used to service an insured's residence" within the meaning of an exception to a personal property exclusion in the insured's homeowner's insurance policy and explaining that if a broader interpretation were applied to the exception, "then the motor vehicle exclusion would have no applicability to vehicles or conveyances not subject to motor vehicle registration so long as the insured claimed that he used the vehicle to service his residence at least one time.").

## III. CONCLUSION

[¶ 19] In summary, we conclude that Cookson's Case 590M tractor, purchased for approximately $27,000, is not the type of vehicle that falls within the limited exception for "vehicles not subject to motor vehicle registration" to the otherwise broad personal property exclusion of all "[m]otor vehicles or all other motorized land conveyances." This item of heavy construction machinery is also not the type a homeowner would commonly purchase and employ simply to service his or her residence. As a result, it is not covered by the homeowner's insurance policies at issue in this case.

The entry is:

Judgment affirmed.

SILVER, J., with whom JABAR, J., joins, dissenting.

[¶ 20] I respectfully dissent. The insurance policy covers motor vehicles and motorized land conveyances that are (1) not subject to motor vehicle registration and (2) used to service a residence. The phrase "subject to motor vehicle registration" is not ambiguous, and Cookson's Case 590M is not the type of vehicle that is subject to motor vehicle registration. The phrase "service an insured's residence," however, is ambiguous and should be construed in favor of Cookson. Taken together, these provisions indicate that the Case 590M falls within the exception to the motor vehicle exclusion. The insurance policy should cover the loss.

[¶ 21] Whether the Case 590M is subject to motor vehicle registration depends on whether vehicles of the same type are generally required to be registered. Certain types of vehicles are subject to registration whether or not an owner actually intends to register his particular vehicle. *Kimball v. New England Guar. Ins. Co.*, 642 A.2d 1347, 1348–49 (Me.1994). Although *Kimball* suggests that vehicle type is distinct from and paramount to vehicle use, it was unnecessary to distinguish type from use in that case because pickup trucks are tantamount to passenger cars; both are presumed to be driven on public ways and both are subjected to the same registration requirements pursuant to the motor vehicle statute. *See id.;* 29–A M.R.S. § 501(1) (2011). Whether a particular driver chooses not to drive a pickup truck on a public way is irrelevant because pickup trucks are clearly the type of motor vehicles for which the statute contemplates registration. *See* 29–A M.R.S. § 501(1).

[¶ 22] The classification of the type of vehicle at issue here is much less clear than in *Kimball.* A Case 590M is a large tractor with backhoe and bucket attachments that is commonly used for commercial construction projects. The parties alternately refer to it as a loader, tractor, backhoe, and special mobile equipment. The majority refers to it as "heavy construction machinery." A vehicle of this sort is clearly not akin to an automobile used primarily to transport persons or property. *See* 29–A M.R.S. § 101(7) (2011). Determining whether a motor vehicle that is used less like a car and more like farm or construction equipment is the type of vehicle that is usually subject to registration requires a closer examination of the motor vehicle statute than was necessary in *Kimball.*

[¶ 23] Pursuant to the motor vehicle statute, whether a certain type of vehicle must be registered depends on how it is used. The statute explicitly qualifies the registration requirements for all vehicles by providing that only a "vehicle that is operated or remains on a public way" must be registered. 29–A M.R.S. § 351 (2011). When the classification of the type of vehicle at issue is less clear than it was in *Kimball,* the use to which the vehicle is put becomes more relevant to determining whether it is a type of vehicle that must be registered. *See N.A. Burkitt, Inc. v. Champion Rd. Mach.,* 2000 ME 209, ¶ 12, 763 A.2d 106 (noting that one reason graders are not considered "motor vehicles" pursuant to the Motor Vehicles Dealers Act is that they are usually used off-road at construction sites).

[¶ 24] Cookson did not use the Case 590M as an on-road vehicle or to transport himself or his property. Cookson's deposition testimony indicates that he only drove the vehicle between his current home, a plot of land on which he was building a new home, and his father's house for repairs. These properties were within three or four miles of each other. Cookson drove the vehicle with one set of wheels in the ditch along the side of the road and

one set of wheels on the shoulder, and he avoided the road when possible by traveling on wooded snowmobile trails. The vehicle has a maximum speed of twenty-five miles per hour. He used the vehicle to perform general site work on his Acton property, including building a driveway, well, and drainage ditch. He also used it for snow removal and yard work at his current home in West Newfield. This use of a Case 590M is more akin to a farm or logging vehicle used on-road only incidentally to its primary off-road use and only to move to and from premises where it is kept, work sites, and repair sites. *See* 29-A M.R.S. § 510 (2011). It does not render the vehicle the type that must be registered.

[¶ 25] For the insurance policy to cover the tractor it also must have been used to "service [his] residence." This phrase is not defined in the insurance policy. Servicing in common usage can be limited to maintenance work, or broadly defined to include assistance with any kind of work done on the property. See Webster's II New College Dictionary 1010 (2001). Because the policy does not make clear which type of servicing it intends to cover, I conclude that this language is ambiguous. *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶¶ 6, 10, 942 A.2d 1213 (stating that interpretation of an insurance contract is reviewed de novo and that "[c]ontractual language is ambiguous if it is reasonably susceptible of different interpretations" (quotation marks omitted)). Cookson's deposition testimony established that he bought the vehicle to remove snow and perform yard work at his home in West Newfield, and he actually used it for these tasks. He also regularly used the vehicle to perform general site work on his property in Acton. Whether these actions constitute servicing, regardless of whether the average homeowner would have bought the same machinery for this purpose, is not clear from

the policy or from the summary judgment record. Accordingly, the policy should be construed in Cookson's favor to include the type of work he performed with the Case 590M. *See id.* ¶ 10 ("Ambiguities in insurance contracts are to be construed in favor of the insured.").

[¶ 26] Because the Case 590M as Cookson used it is not the type of vehicle that is subject to motor vehicle registration and because the tasks for which Cookson used it can be considered servicing a residence, I interpret the insurance policy to provide coverage for the loss. I do not, however, agree with Cookson that he is entitled to a replacement value equal to the purchase price of a brand new Case 590M. Liberty Mutual argues that the tractor should be considered "outdoor equipment," such that Cookson would be entitled to "actual cash value at the time of loss." The insurance adjuster determined that the actual cash value of Cookson's tractor is $27,825 based on the retail price, transportation costs, and sales tax required to purchase a comparable used tractor. Cookson believes that the tractor is "personal property," such that he would be entitled to the "replacement cost with a similar item of like kind and quality at the time of loss." Cookson suggests that this entitles him to the purchase price of a brand new Case 590M, which is $106,050.

[¶ 27] Pursuant to either provision, Cookson is not entitled to recover the full cost of a brand new Case 590M. Cookson's Case 590M was used when he bought it in 2005 for approximately $27,000. The average person would not conclude that the language of the insurance policy entitles an insured to a brand new tractor to replace a tractor that he purchased used more than six years ago and that he has used extensively since then. *See Peerless Ins. Co. v. Wood*, 685 A.2d 1173, 1174 (Me.1996) ("[W]e view the contract language from the perspective of an average person, un-

trained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured."). The policy clearly attempts to limit payment by entitling the insured to the lesser amount of the replacement cost or the cost of repair. In light of this language, it would be unreasonable for Cookson to expect that the policy entitles him to a payment of nearly four times the amount he paid for the tractor or the amount he would have to pay to purchase a similar tractor today. Therefore, I would find that Cookson is entitled to coverage for his loss, but the amount to which he is entitled should not exceed the amount it would cost for him to purchase a used tractor comparable to the one he purchased in 2005.