MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:    2017 ME 166
Docket:      Pen-16-536
Argued:      June 15, 2017
Decided:     July 25, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

RICHARDIE KELLEY

v.

NORTH EAST INSURANCE COMPANY

GORMAN, J.

[¶1]  Richardie Kelley appeals from the entry of a summary judgment in the Superior Court (Penobscot County, *Anderson, J.*) in favor of North East Insurance Company on the reach and apply action she brought pursuant to 24-A M.R.S. § 2904 (2016).  The court concluded that the damages awarded to Kelley in the underlying action, *see* 7 M.R.S. § 3961(2) (2016), were based on a claim that was not covered by the North East automobile insurance policy. We agree and affirm the judgment.

## I. BACKGROUND

[¶2]   The following facts are undisputed.   Teresa Snyder held an automobile insurance policy from North East pursuant to which she was the "named insured" and her 1999 Ford Mustang was the "covered auto."  Snyder

and Tim McCann were the unmarried co-owners of a dog. On February 21, 2009, McCann drove one of his employer's cars to Frankfort to meet Kelley, who had purchased an old pickup truck from McCann's son. McCann brought the dog with him in the car. During the transfer of the pickup truck, someone[1] opened the door to the car containing the dog, and the dog, without leaving the car, bit Kelley in the face. Snyder was not present during this incident and was not a driver, passenger, or owner of the car that the dog was in when it bit Kelley. Kelley filed a lawsuit against Snyder and McCann, for which North East declined to defend or indemnify Snyder. *See* 7 M.R.S. § 3961(2). The parties to that suit stipulated to a judgment of $100,000.

[¶3] On December 4, 2015, Kelley filed a complaint against North East pursuant to 24-A M.R.S. § 2904, seeking to satisfy her judgment against Snyder through Snyder's auto insurance policy.[2] After discovery, the parties filed cross-motions for summary judgment. On November 16, 2016, the court granted North East's motion for the entry of a summary judgment and denied Kelley's. The court concluded that, pursuant to the definition in the policy,

---

[1] The parties dispute whether McCann or Kelley opened the door to the car, an issue that is not material to our resolution of this case. *See Strong v. Brakeley*, 2016 ME 60, ¶ 4, 137 A.3d 1007 ("[A]n issue is material if it could potentially affect the outcome of the matter." (quotation marks omitted)).

[2] Neither Snyder nor McCann had a homeowner's insurance policy. The record contains no information about any insurance policy covering the vehicle McCann was driving.

Snyder was not an "insured" for the purposes of Kelley's suit and that Kelley's bodily injury did not arise from an "auto accident" as required by the policy. Kelley timely appealed.

## II. DISCUSSION

[¶4]  We review de novo both a court's grant of summary judgment and its interpretation of an insurance policy.  *Cox v. Commonwealth Land Title Ins. Co.*, 2013 ME 8, ¶ 8, 59 A.3d 1280.  Where, as here, the material facts are not in dispute, we limit our review to whether the prevailing party was entitled to judgment as a matter of law.  *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 7, 66 A.3d 585; *see* M.R. Civ. P. 56.

[¶5]  The review of a judgment in a reach and apply action requires us to first "identify the basis of liability and damages from the underlying complaint and judgment" and then to "review the . . . insurance policy to determine if any of the damages awarded in the underlying judgment are based on claims that would be recoverable pursuant to the . . . policy." *Langevin*, 2013 ME 55, ¶ 8, 66 A.3d 585 (quotation marks omitted); *see* 24-A M.R.S. § 2904.  If the language of an insurance policy is unambiguous, we interpret it in accordance with its plain meaning, but we "construe ambiguous policy language strictly against the insurance company and

4

liberally in favor of the policyholder."[3]  *Langevin*, 2013 ME 55, ¶ 9, 66 A.3d

585 (quotation marks omitted).  Further, we view the language of the policy

"from the perspective of an average person untrained in either the law or the

insurance field in light of what a more than casual reading of the policy would

reveal to an ordinarily intelligent insured."  *Union Mut. Fire Ins. Co. v.*

*Commercial Union Ins. Co.*, 521 A.2d 308, 310 (Me. 1987) (quotation marks

omitted).

[¶6]  Kelley bears the burden of showing that the damages she was

awarded in the underlying action are based on a claim that falls within the

scope of Snyder's policy with North East.  *See Langevin*, 2013 ME 55, ¶ 8,

66 A.3d 585.  The policy obligated North East to indemnify Snyder for "'bodily

injury' . . . for which any 'insured' becomes legally responsible because of an

auto accident."  The policy did not define the term "auto accident."  Kelley

urges us to conclude that the term is broad enough to include a dog bite that

occurred in or near a car because, she contends, the bite arose out of the use

---

[3] One of Kelley's arguments is that we must construe all policy language in favor of the insured. To the extent that we have been less than clear on this point in the past, we clarify that we construe insurance policy language "strictly against the insurance company and liberally in favor of the policyholder" only where that language is ambiguous. *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 9, 66 A.3d 585 (quotation marks omitted).  As with any contract, where the language of an insurance policy is clear and unambiguous, we interpret it in accordance with its plain meaning. *See Cookson v. Liberty Mut. Fire Ins. Co.*, 2012 ME 7, ¶ 8, 34 A.3d 1156 ("Unambiguous language in an insurance contract must be interpreted according to its plain and commonly accepted meaning." (quotation marks omitted)); *see also Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 9, 983 A.2d 400.

of a vehicle. Interpreting "auto accident" in accordance with its "plain and commonly accepted meaning," *Cookson v. Liberty Mut. Fire Ins. Co.*, 2012 ME 7, ¶ 8, 34 A.3d 1156 (quotation marks omitted), we conclude otherwise.

[¶7] "Accident," which is also undefined in the policy, is commonly understood to mean "[a]n event that is without apparent cause or unexpected; an unfortunate event, [especially] one causing injury or damage." 1 Shorter Oxford English Dictionary 14 (6th ed. 2007); *see Patrick v. J. B. Ham Co.*, 119 Me. 510, 517, 111 A. 912 (1921) ("[A]n accident is a befalling; an event that takes place without one's forethought or expectation; an undesigned, sudden, and unexpected event. Its synonyms include mishap, mischance, misfortune[,] disaster, calamity, catastrophe."). We therefore interpret "auto accident"—an unambiguous term—to mean an unintended and unforeseen injurious occurrence involving an automobile. "[V]iewed from the perspective of an average person," *Union Mut. Fire Ins. Co.*, 521 A.2d at 310, the plain meaning of "auto accident"—although broader than a collision or car crash— does not stretch so far as to encompass bodily injury from a dog bite that occurred in a car that had absolutely no causal connection to the injury and that was not even in operation.[4]

---

[4] Our conclusion that this dog bite injury does not fit within the term "auto accident" is bolstered by the current definition of that term in legal dictionaries, which would support an even

6

[¶8] Kelley contends that our decision in *Union Mutual Fire Insurance Company v. Commercial Union Insurance Company*, 521 A.2d 308 (Me. 1987), obliges us to conclude that her damages are recoverable pursuant to the policy because her bodily injury arose from the "use" of an automobile. Although the auto insurance policy in that case contained language nearly identical to the language we consider today, our holding in *Union Mutual* is inapposite here.[5] *See id.* at 309. There, we accepted two certified questions of state law from the United States District Court for the District of Maine. *Id.* at 310. Those questions asked us to determine whether a particular injury arose from the "use" of a vehicle—language contained in one clause of the policy. *Id.* Constrained by the questions presented, we did not consider whether that injury resulted from an "auto accident"—language contained in another clause. *See id.* at 309-11. Consequently, *Union Mutual* is not controlling in this case, in which our de novo review is not limited to the interpretation of the "use" clause of the policy.

more restrictive interpretation. *See, e.g.*, Black's Law Dictionary 18 (10th ed. 2014) (defining "car accident" as "[a]n accident in which a motor vehicle collides with another vehicle or with a person, animal, or object, [usually] causing damage or injury. — Also termed *automobile accident . . . .*").

  [5] The auto insurance policy in *Union Mutual* obligated the insurer to "pay damages for bodily injury . . . for which any covered person becomes legally responsible because of an auto accident," *cf. supra* ¶ 6, and defined "covered person" as "the named insured or any family member for the ownership, maintenance or use of any auto or trailer." *Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d 308, 309 (Me. 1987) (quotation marks omitted).

[¶9]  Because we conclude that Kelley's claim in the underlying action is not covered by the North East policy, she has failed to carry her burden, *see* 24-A M.R.S. § 2904; *Langevin*, 2013 ME 55, ¶ 8, 66 A.3d 585, and we affirm the judgment.[6]

The entry is:

Judgment affirmed.

---

Arthur J. Greif, Esq. (orally), Gilbert & Greif, P.A., Bangor, for appellant Richardie Kelley

John S. Whitman, Esq. (orally), Richardson, Whitman, Large & Badger, Portland, for appellee North East Insurance Company

Penobscot County Superior Court docket number CV-2015-236
FOR CLERK REFERENCE ONLY

---

[6]  We find Kelley's contention that Snyder was an "insured" for this accident wholly unpersuasive and decline to address it.