**2024 WI APP 19**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:          2022AP742

Complete Title of Case:

       **ROBERT BOLGER,**

          **PLAINTIFF-RESPONDENT,**

        **V.**

       **MASSACHUSETTS BAY INSURANCE COMPANY,**

          **DEFENDANT-APPELLANT,**

       **HUDSON SPECIALTY INSURANCE COMPANY, ABC INSURANCE
       COMPANY AND DEF INSURANCE COMPANY,**

          **DEFENDANTS,**

       **MOODY INSURANCE AGENCY, INC. OAP CHOICE PLAN, BY ITS
       CLAIMS ADMINISTRATOR AND CIGNA HEALTH AND LIFE INSURANCE
       COMPANY,**

          **SUBROGATED DEFENDANTS,**

       **BRADY ACHTENHAGEN AND AUTO-OWNERS INSURANCE COMPANY,**

          **DEFENDANTS-THIRD-PARTY PLAINTIFFS,**

        **V.**

       **BLAKE CROSS,**

          **THIRD-PARTY DEFENDANT.**

| | |
|---|---|
| Opinion Filed: | March 26, 2024 |
| Submitted on Briefs: | February 22, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael P. Crooks* and *Maria del Pizzo Sanders* of *von Briesen & Roper, S.C.*, Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David S. Blinka* of *Habush Habush & Rottier, S.C.*, Madison. |

COURT OF APPEALS
DECISION
DATED AND FILED

March 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2022AP742**

Cir. Ct. No.  **2019CV113**

STATE OF WISCONSIN

IN COURT OF APPEALS

---

ROBERT BOLGER,

PLAINTIFF-RESPONDENT,

V.

MASSACHUSETTS BAY INSURANCE COMPANY,

DEFENDANT-APPELLANT,

HUDSON SPECIALTY INSURANCE COMPANY, ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY,

DEFENDANTS,

MOODY INSURANCE AGENCY, INC. OAP CHOICE PLAN, BY ITS CLAIMS ADMINISTRATOR AND CIGNA HEALTH AND LIFE INSURANCE COMPANY,

SUBROGATED DEFENDANTS,

BRADY ACHTENHAGEN AND AUTO-OWNERS INSURANCE COMPANY,

DEFENDANTS-THIRD-PARTY PLAINTIFFS,

V.

**BLAKE CROSS,**

   **THIRD-PARTY DEFENDANT.**

---

APPEAL from an order of the circuit court for Vilas County: MARTHA J. MILANOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1     GILL, J. The dispute in this case surrounds a homeowner's insurance policy (hereinafter, "the policy") issued by the Massachusetts Bay Insurance Company (MBIC) to the insureds, Bret and Amy Achtenhagen, and whether that policy provided them with coverage for "personal liability" and "medical payments to others" following a utility terrain vehicle (UTV) accident away from their primary residence.  The policy excluded that coverage for the ownership, maintenance, use, loading or unloading of the UTV.  However, an exception to that exclusion reinstated the coverage for lawsuits brought against the Achtenhagens for bodily injury arising out of "[t]he ownership, maintenance, use, loading or unloading of" a UTV "which is" "[u]sed to service an 'insured's' residence."  The questions on appeal are whether the exception is fairly susceptible to more than one reasonable construction and whether, under the policy, MBIC was bound to defend and indemnify the Achtenhagens.

¶2     Although no Wisconsin appellate court has previously interpreted the particular language used in the policy exception at issue, we conclude that the exception, when properly read in the context of the policy's other language, is reasonably susceptible to more than one construction.  Either the exception: (1) reinstates liability coverage for an occurrence resulting in bodily

injury at the "'insured's' residence" arising out of a conveyance that was servicing that residence at the time of the occurrence; or (2) reinstates coverage for an occurrence resulting in bodily injury at any location arising out of a conveyance that serviced the "'insured's' residence" at some point, but not necessarily at the time of the injury. The complaint in this case adequately alleged facts that would require MBIC to defend and indemnify the Achtenhagens under the second of these reasonable interpretations. Accordingly, the circuit court properly concluded that MBIC was obligated to defend and indemnify the Achtenhagens. We therefore affirm.

## BACKGROUND

¶3    MBIC issued a homeowner's insurance policy to Bret and Amy Achtenhagen covering the period from November 2018 to November 2019. According to the policy's declarations page, the policy covered the Achtenhagens' primary home in Dousman, Wisconsin, where they and their son Brady[1] lived. The policy, which we describe in greater detail below, included a section titled "Liability coverages," which provided coverage for "personal liability" and "medical payments to others." The section also contained an exclusion (hereinafter, "exclusion") stating that those two coverages did not apply to "bodily injury" or "property damage" "[a]rising out of" "[t]he ownership, maintenance, use, loading or unloading of … motorized land conveyances … owned or operated by … an 'insured.'" An exception (hereinafter, "Exception (4)(a)") provided that the exclusion did not apply to "[a] vehicle or conveyance not subject to motor vehicle registration which is" "[u]sed to service an 'insured's' residence."

---

[1]  We refer to Brady using his first name to avoid any confusion.

¶4      In December 2018, Robert Bolger was a passenger on a UTV operated by Brady near the Achtenhagens' second home on South Turtle Lake in Winchester, Wisconsin. While Brady was operating the UTV on the lake's frozen surface, Brady "lost control" of the UTV, which turned over on its side and crushed Bolger's right leg.

¶5      Bolger filed a lawsuit against Brady and numerous entities, including MBIC. Bolger asserted that MBIC, as the Achtenhagens' insurer, was liable to him for his injuries and damages.[2] MBIC filed an answer and affirmative defenses, asserting that the policy did not provide "liability coverage for the losses alleged" in Bolger's complaint.

¶6      Another insurance company named in the lawsuit filed a motion to bifurcate the issues of insurance coverage from the merits of the underlying action and to stay all liability proceedings, which MBIC joined. The circuit court granted the motion. Thereafter, MBIC filed a motion for declaratory judgment, arguing that it had no duty to defend and indemnify the Achtenhagens because the policy did not provide liability coverage to them. In particular, MBIC asserted that Exception (4)(a) did not apply because Bolger's injuries occurred "away from the insured location." That is, the accident occurred at the Achtenhagens' second residence in Winchester, not at their primary residence in Dousman.

¶7      The circuit court denied MBIC's motion for declaratory judgment, reasoning that Exception (4)(a) was ambiguous. The court therefore held that MBIC was obligated to defend and indemnify the Achtenhagens.[3] Prior to a scheduled jury

---

[2] It is undisputed that Brady was an "insured" under the policy.

[3] Following the circuit court's order denying MBIC's motion for declaratory judgment, MBIC filed a petition for leave to appeal in this court. We denied that petition.

trial, MBIC stipulated to a judgment in the amount of $150,000 (conditioned on the outcome of this appeal), and, pursuant to that stipulation, the court entered an order awarding Bolger a judgment in that amount against MBIC. MBIC now appeals that order, arguing that the policy unambiguously did not provide liability coverage to the Achtenhagens for Bolger's injury.

## DISCUSSION

¶8      Where a circuit court's denial of declaratory judgment turns upon its interpretation of an insurance policy, a question of law is presented that we review de novo. *See* ***Dostal v. Strand***, 2023 WI 6, ¶18, 405 Wis. 2d 572, 984 N.W.2d 382. Similarly, we independently interpret an insurance policy to determine whether coverage is provided, *id.*, ¶20, and whether any ambiguity exists, ***Varda v. Acuity***, 2005 WI App 167, ¶8, 284 Wis. 2d 552, 702 N.W.2d 65.

¶9      "Contracts for insurance typically impose two main duties: the duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages." ***Olson v. Farrar***, 2012 WI 3, ¶27, 338 Wis. 2d 215, 809 N.W.2d 1. "An insurer must indemnify an insured against losses that are covered under the terms of the policy." ***Id.***, ¶28. However, an "insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." ***Id.***, ¶29 (citation omitted). MBIC refused to provide a defense to the Achtenhagens for Bolger's lawsuit. Therefore, the question on this appeal is whether MBIC had a duty to defend Achtenhagens under the policy because it "could be held bound to indemnify" them. *See **id.***

¶10      To answer this question, we apply the four-corners rule. *See **id.***, ¶33. Under the four-corners rule, "[a]n insurer's duty to defend an insured is determined

5

by comparing the allegations of the complaint to the terms of the insurance policy." *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶19, 261 Wis. 2d 4, 660 N.W.2d 666. The "rule prohibits a court from considering extrinsic evidence when determining whether an insurer breached its duty to defend." *Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285. Furthermore, "a court must liberally construe the allegations contained in the underlying complaint [and] assume all reasonable inferences from the allegations made in the complaint." *Id.*

¶11     The Wisconsin standard for determining whether an insurance policy provides coverage is well settled, and it involves three steps of analysis.

> [A] court first looks to the initial grant of coverage…. "If the court determines that the initial grant of coverage does cover the type of claim presented, the second step requires the court to examine the policy's exclusions to determine whether coverage has been withdrawn by an exclusion." "[I]f coverage for the claim has been withdrawn by an exclusion, the court examines any exceptions to that exclusion that might reinstate coverage for the claim."

*Schinner v. Gundrum*, 2013 WI 71, ¶37, 349 Wis. 2d 529, 833 N.W.2d 685 (second alteration in original; citations omitted). "We interpret an insurance contract as it would be understood by a reasonable person in the position of the insured," and "we seek to 'give effect to the intent of the contracting parties.'" *Id.*, ¶38 (citation omitted). When interpreting an insurance policy, we give the words used in the policy their common and ordinary meaning. *Wadzinski v. Auto-Owners Ins. Co.*, 2012 WI 75, ¶11, 342 Wis. 2d 311, 818 N.W.2d 819.

¶12     "Where ambiguity exists in a grant of coverage, we will construe the policy against the drafter, and in favor of the reasonable expectations of the insured." *Id.* An insurance policy's grant of coverage can present ambiguity in one

of two ways. First, the "[t]erms of an insurance policy may be inherently ambiguous." ***Frost ex rel. Anderson v. Whitbeck***, 2002 WI 129, ¶18, 257 Wis. 2d 80, 654 N.W.2d 225. Second, and as relevant to the policy in this case, "a clear and unambiguous provision may be found ambiguous in the context of the entire policy." ***Folkman v. Quamme***, 2003 WI 116, ¶19, 264 Wis. 2d 617, 665 N.W.2d 857.

> The test for determining whether contextual ambiguity exists is the same as the test for ambiguity in any disputed term of a policy. That is, are words or phrases of an insurance contract, when read in the context of the policy's other language, reasonably or fairly susceptible to more than one construction?

***Id.***, ¶29. "[I]nconsistencies in the context of a policy must be material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning." ***Id.***, ¶32.

¶13    Turning to the policy at issue in this case, we begin with the policy's declarations page, "which is 'generally the portion of an insurance policy to which the insured looks first,' and 'is the most crucial section of the policy for the typical insured.'" *See id.*, ¶37 (citations omitted). The declarations page stated that "the premises covered by this policy is located at" a specified address in Dousman, Wisconsin.

¶14    The parties agree that the policy provided an initial grant of liability coverage for "personal liability" and "medical payments to others."[4] The parties also agree that the initial grant of coverage was superseded—barring an applicable

---

[4] The coverage for "medical payments to others" included coverage for bodily injury that occurred "off the 'insured location'" and was "caused by the activities of an 'insured.'" The coverage for "personal liability" similarly did not limit coverage to an "insured location."

exception—by the exclusion, which states that the liability coverage did not apply to bodily injury "[a]rising out of" "[t]he ownership, maintenance, use, loading or unloading of … motorized land conveyances … owned or operated by … an 'insured.'"[5]

¶15    We therefore turn to the policy's various exceptions to that exclusion. The policy states that the "exclusion does not apply to":

> (1) A trailer not towed by or carried on a motorized land conveyance.
>
> (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
>
> > (a) Not owned by an "insured"; or
> >
> > (b) Owned by an "insured" and on an "insured location";
>
> (3) A motorized golf cart when used to play golf on a golf course;
>
> (4) A vehicle or conveyance not subject to motor vehicle registration[6] which is:
>
> > (a) Used to service an "insured's" residence;
> >
> > (b) Designed for assisting the handicapped; or
> >
> > (c) In dead storage on an "insured location[.]"

---

[5] The policy also includes an exclusion to coverage for "personal liability" and "medical payments to others" for bodily injury "[a]rising out of a premises" "[o]wned by an insured" "that is not an 'insured location.'" MBIC does not argue that this particular exclusion applies, and we will not consider it further.

[6] MBIC does not contend that the UTV was not a "conveyance" or that it was "subject to motor vehicle registration."

"Insured location" was defined by the policy as, in relevant part, the "residence premises," which, in turn, was defined as the "one family dwelling, other structures, and grounds" "where you reside and which is shown as the 'residence premises' in the" declarations page (i.e., the Dousman residence).

¶16 The parties disagree whether Exception (4)(a) applies to the "occurrence"[7] in this case and, relatedly, whether its application is ambiguous. According to MBIC, Exception (4)(a) applies only to a conveyance that was servicing the Dousman residence at the time of the occurrence, and the complaint contained "no allegations … that the injury arose out of the use of the UTV servicing the insured premises in Dousman." MBIC further asserts that the parties "clearly" did not intend the policy to cover a "recreational" UTV accident at a separate residence than the one declared in the policy.

¶17 Conversely, Bolger contends that Exceptions (1)-(4) "create a textbook example of ambiguity." Bolger argues that, in addition to MBIC's interpretation noted above, "a reasonable insured [c]ould also conclude that [Exception (4)(a)] does not require the [UTV] to be in use servicing the insured's residence at the time of [the occurrence]." Bolger states a reasonable insured could interpret Exception (4)(a) as requiring only that the UTV *at one point* serviced the "'insured's' residence," and containing no geographic or use limitation beyond that. Bolger also claims that because "an 'insured's' residence" is not a defined term in the policy, the Achtenhagens' Winchester residence could fall within the meaning of the term.

---

[7] The policy defined an "occurrence" as an "accident … which results" in "[b]odily injury" or "[p]roperty damage." MBIC does not contend that the UTV accident did not constitute an "occurrence."

¶18 Although no Wisconsin appellate court has previously interpreted the particular language used in the policy's liability coverage section, we agree with Bolger that Exception (4)(a) is ambiguous when considered within the context of the entire policy. It is unclear from the exception's language, "[u]sed to service," whether liability coverage exists only if the occurrence takes place while a conveyance is servicing "an 'insured's' residence," or if coverage exists regardless of where the occurrence takes place provided the conveyance at one point serviced "an 'insured's' residence."[8]

¶19 Thus, there are two reasonable interpretations of Exception (4)(a). Either the exception: (1) reinstates coverage for an occurrence resulting in bodily injury at the "'insured's' residence" arising out of a conveyance that was servicing that residence at the time of the occurrence; or (2) reinstates coverage for an occurrence resulting in bodily injury at any location arising out of a conveyance that serviced the "'insured's' residence" at some point, but not necessarily at the time of the injury. Neither of these interpretations is unreasonable when the meaning of

---

[8] We acknowledge that ambiguity may also exist with respect to Exception (4)(a)'s use of the term "an 'insured's' residence." That term is not defined in the policy, unlike the terms "[i]nsured location" and "[r]esidence premises." However, because we find ambiguity in Exception (4)(a)'s "[u]sed to service" language, which is dispositive of the coverage issue, we need not address whether the undefined term "an 'insured's' residence" creates additional ambiguity. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue … when one issue is dispositive.").

Exception (4)(a) is "ascertained with reference to the contract as a whole."[9] *See Folkman*, 264 Wis. 2d 617, ¶24 (citation omitted).

¶20 To explain, Exceptions (1)-(4) to the exclusion reinstate coverage for "personal liability" and "medical payments to others" with varying degrees of specificity as to conveyance use and the location of any injury. Exception (4)(c) imposes a geographic and use limitation by limiting reinstated coverage to a bodily injury arising out of a vehicle or conveyance "which is" "[i]n dead storage *on an* '*insured location*.'"[10] (Emphasis added.) Conversely, Exception (4)(b) imposes no geographic limitation or use limitation on the reinstatement of liability coverage. It provides coverage for bodily injury arising out of a vehicle or conveyance "[d]esigned for assisting the handicapped." The exception does not geographically limit the reinstatement of liability coverage by using language such as "on an

---

[9] At least one other jurisdiction has interpreted similar policy language in a third manner. *See Cookson v. Liberty Mut. Fire Ins. Co.*, 34 A.3d 1156, 1159-60 (Me. 2012) (holding that whether the exception applies depends on whether the average insured would "commonly employ" the conveyance at issue to service his or her residence). We further note that a number of other jurisdictions have also addressed similar, if not identical, policy language and have each concluded that one of the two interpretations identified in this opinion unambiguously applies. *See, e.g.*, *Bumgardner v. Terra Nova Ins. Co.*, 806 So. 2d 945, 949 (La. Ct. App. 2002) ("We do not believe that the exception to the exclusion can be so broadly construed to provide coverage for an accident that did not occur on an insured location and that involved a vehicle or conveyance that is rarely, if ever, used to service the insured's residence simply because the insured may have used it at one time to do so."); *Nationwide Mut. Ins. Co. v. Prevatte*, 423 S.E.2d 90, 91, 93 (N.C. Ct. App. 1992) ("The policy at issue provides that the ATV be used to service the insured's residence, *not* that the ATV be used to service the insured's residence at the time of the accident."); *Balboa Ins. Co. v. Rhymer*, No. 11-3440, 2013 WL 12241444, at *3 (D.S.C. Jan. 11, 2013) ("Although Balboa contends that the exception does not apply because the ATV was not being used to service the insured's residence *at the time of the accident*, the policy language does not so restrict the exception."). We do not find these cases persuasive, given the fact that they are from outside of Wisconsin and did not consider the policy as a whole to determine whether the language used in the relevant exception was contextually ambiguous. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶15, 305 Wis. 2d 658, 741 N.W.2d 256 ("[C]ase law from outside jurisdictions is not controlling in Wisconsin.").

[10] The emphasized language is also used in Exception (2), which limits coverage for bodily injury arising out of a conveyance "[o]wned by an 'insured' and *on an* 'insured location.'" (Emphasis added.)

'insured location'" or "[i]n dead storage." The vehicle or conveyance must simply be "[d]esigned for assisting the handicapped."

¶21 Importantly, the exceptions to the exclusion for "personal liability" and "medical payments to others" that impose a geographic limitation are not all limited to the "insured location." Exception (3) limits the reinstatement of liability coverage to a specific location and to a specific vehicle or conveyance use, stating that coverage exists for bodily injury arising out of a "motorized golf cart *when used to play golf on a golf course*." (Emphasis added.) Thus, a reasonable insured could conclude that where the policy limits the reinstatement of liability coverage to a geographic location, it states that the bodily injury must arise out of a vehicle or conveyance "on" or "in" a particular location. Similarly, a reasonable insured could conclude that where the policy limits the reinstatement of liability coverage to a particular vehicle or conveyance use at the time of the injury, it states that the bodily injury must arise out of the vehicle or conveyance "when used to" carry out the activity.

¶22 Exception (4)(a) provides for the reinstatement of liability coverage for a vehicle or conveyance "which is" "used to service" a location. However, it does so using language that differs from that used to define limitations to the reinstatement of coverage in other exceptions. Specifically, Exception (4)(a) contains no geographically limiting language like Exceptions (2) ("*on* an 'insured location'"), (4)(c) (same), or (3) ("*on* a golf course"). (Emphasis added.) Nor does Exception (4)(a) contain language limiting coverage to a particular use at the time of the bodily injury like Exception (3) ("when used to").

¶23 Without the language used in the other exceptions to limit the reinstatement of liability coverage by a particular geographic location or by a

particular use at the time of the bodily injury, a reasonable insured could interpret Exception (4)(a) to offer such coverage anywhere for any location or purpose, so long as the conveyance was once "[u]sed to service an 'insured's' residence." Further, an insured could reasonably conclude such coverage would be reinstated for bodily injury occurring due to the use of a UTV only while servicing "an 'insured's' residence." Such an interpretation could be seen by a reasonable insured as consistent with the declarations page and the parties' intent. As Bolger argues on appeal, "[b]ecause MBIC chose to use disparate phrases and definitions within its various exceptions, a reasonable insured [c]ould conclude that such provisions lacking particular geographic limitation are not so limited."

¶24    MBIC repeatedly emphasizes that a reasonable insured would not expect MBIC to provide liability coverage in this case because the policy was issued to cover the Dousman residence.[11] According to MBIC, a "homeowner's insurance policy is issued to cover a specific premises and activities that occur in conjunction with that premises."

¶25    As explained above, however, the policy undoubtedly extended liability in some circumstances beyond the Dousman residence. For example, Exception (3) provided coverage for injuries arising on a golf course; yet, the complaint and the policy lacked any allegation or evidence that there was a golf course at the Dousman residence. Furthermore, MBIC chose to specify that it would

---

[11] MBIC further contends that had the Achtenhagens wanted coverage for an occurrence resulting in bodily injury arising out of a conveyance "for any use, anywhere, so long as it had at one time in the past been used to service the Dousman residence," "an endorsement was available to be added to the … policy which would have covered use of the UTV away from the insured residence." However, as Bolger asserts in his brief-in-chief, MBIC's argument goes beyond the proper standard of insurance policy interpretation under the four-corners rule, and we will not consider any purported endorsements to the policy that were not included in the policy itself or in the complaint. *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285.

cover medical payments to others if the bodily injury occurred "off the 'insured location'" and it was "caused by the activities of an 'insured.'" It similarly did not limit personal liability coverage to an "insured location." While it is reasonable for an insured to assume that coverage would typically only exist at the "insured residence," it is equally reasonable, given the foregoing context, for an insured to interpret Exception (4)(a) as providing no such limitation.

¶26     MBIC additionally argues that this court's decision in *Varda* supports its position that Exception (4)(a) unambiguously provides liability coverage only if the occurrence happens at, and while a conveyance is servicing, the Dousman residence. In *Varda*, Acuity issued an insurance policy to the Quella family that included an exclusion for "[t]he ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured." *Varda*, 284 Wis. 2d 552, ¶14 n.5 (alteration in original). The policy also included an exception to the exclusion "for motorized land conveyances for vehicles 'not subject to motor vehicle registration … [u]sed to service an insured's residence.'" *Id.*, ¶20 (alteration in original).

¶27     During the insurance coverage period in that case, an insured member of the Quella family was cutting someone else's lawn using a "riding mower" while Varda was "walking through a neighbor's yard adjacent to the yard being mowed. A rock thrown up by the mower hit Varda in the eye, injuring her." *Id.*, ¶¶3-4. Varda sued a number of individuals and entities, including Acuity. *Id.*, ¶5. The circuit court determined that the policy did not provide coverage for Varda's injuries because the exclusion for motor vehicles and motorized land conveyances unambiguously applied to the riding mower used by the insured. *Id.*, ¶14.

¶28 On appeal, Varda argued that the "phrase 'motorized land conveyance' is ambiguous" and "that, in the absence of any definition within the policy, an ordinary person in her position would not expect to have to buy separate lawn mower insurance to protect her family." *Id.* In interpreting the exclusion to include a riding mower, we cited a Supreme Court of Iowa case and noted that the policy provided to the Quellas

> would … have provided coverage [under the exception] if [the insured] had been mowing his own lawn when an accident happened. But there would be no need for an exception that restored coverage for riding lawn mowers that service the insured's residence unless the motorized land conveyance exclusion applied to the larger class of riding mowers.

*Id.*, ¶20 (citing ***Gracey v. Heritage Mut. Ins. Co.***, 518 N.W.2d 372, 373-74 (Iowa 1994)).

¶29 According to MBIC, our interpretation of the exception in ***Varda*** "is consistent with [its] interpretation in this matter" because the ***Varda*** court held that "no coverage would exist if [the conveyance was] used at a different residence."

¶30 We agree with Bolger that ***Varda*** is distinguishable from the facts in this case. The ***Varda*** decision did not examine the policy as a whole to determine whether the exception was ambiguous. Notably, in ***Varda***, we did not closely examine the exception in the policy—or the policy as a whole—because the relevant issue was whether language used in the exclusion was ambiguous. We simply discussed the exception to aid in our analysis of the exclusion, and we used that particular situation (i.e., "if [the insured] had been mowing his own lawn when an accident happened") as an example for purposes of defining whether the lawn mower was a motorized land conveyance. Varda did not argue that the exception

applied to the occurrence giving rise to her injury or that the exception was ambiguous. *See id.*, ¶2.

¶31  In other words, while the *Varda* decision correctly stated that coverage would have been reinstated for injuries arising from the use of the lawn mower if the injuries occurred at the insured residence, we did not consider or address whether coverage could not be reinstated if the injuries occurred elsewhere, provided that the lawn mower was used at some time to service the insured residence.  Thus, *Varda* cannot be relied upon as MBIC asserts—to dictate that the UTV must have been used during the occurrence to service the Dousman residence in order for Exception (4)(a) to apply and reinstate MBIC's liability coverage in this case.

¶32  In all, we conclude that Exception (4)(a), when read within the context of the whole policy, has two reasonable interpretations.  Either the exception:  (1) reinstates coverage for an occurrence resulting in bodily injury at "an 'insured's' residence" arising out of a conveyance that was servicing that residence at the time of the occurrence; or (2) reinstates coverage for an occurrence resulting in bodily injury at any location arising out of a conveyance that serviced "an 'insured's' residence" at some point, but not necessarily at the time of the injury.  Because the policy is ambiguous, we construe the policy against MBIC and in favor of the reasonable expectations of the insured.  *See Wadzinski*, 342 Wis. 2d 311, ¶11.

¶33  Under the second reasonable interpretation, MBIC does not argue that Bolger's complaint did not contain allegations that, if true, would require MBIC to defend and indemnify the Achtenhagens.  *See Farrar*, 338 Wis. 2d 215, ¶¶28-29.  We will not develop an argument on MBIC's behalf.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769

N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments."). Therefore, we conclude that MBIC had a duty to defend the Achtenhagens, and we affirm the circuit court's order.

*By the Court.*—Order affirmed.